[No. S113799. Dec. 20, 2004.]

ROWDY ELSNER, Plaintiff and Respondent, v.
CARL UVEGES, Defendant and Appellant;
STATE COMPENSATION INSURANCE FUND, Intervener and Appellant.

916

COUNSEL

Bonesteel & Associates, Summers & Shives, Scott M. Bonesteel and Jodi E. Lambert for Defendant and Appellant.

Horvitz & Levy, Lisa Perrochet, William N. Hancock and Tracy L. Turner for American International Group, Inc., Swinerton Builders, Swinerton Incorporated and SME Steel Contractors, Inc., as Amici Curiae on behalf of Defendant and Appellant.

Marguerite I. Delbourgo for Intervener and Appellant.

Singleton & Associates, Terry Singleton, Horatio Barraza; Law Offices of Daniel U. Smith and Daniel U. Smith for Plaintiff and Respondent.

William A. Herreras and John Messer for California Applicants' Attorneys Association as Amicus Curiae on behalf of Plaintiff and Respondent.

James C. Sturdevant; William L. Veen; Brian C. Unitt; Ian Herzog; David A. Rosen; The Arns Law Firm, Morgan C. Smith and Robert S. Arns for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiff and Respondent.

Michael D. Mason for State of California, Department of Industrial Relations as Amicus Curiae on behalf of Plaintiff and Respondent.

OPINION

**WERDEGAR, J.**—In 1971, the Legislature enacted Labor Code section 6304.5,[1] a statute that barred the admission of California Occupational Safety and Health Act (Cal-OSHA) provisions[2] in employee negligence actions against nonemployers. Labor Code section 6304.5 created an exception to the long-standing common law rule, codified in Evidence Code section 669, that statutes may be admitted to establish a standard or duty of care in negligence actions.

In 1999, the Legislature substantially amended section 6304.5, which now provides in part: "Sections 452 and 669 of the Evidence Code shall apply to this division and to occupational safety and health standards adopted under this division in the same manner as any other statute, ordinance, or

---

[1] Subsequent unlabeled statutory references are to the Labor Code.

[2] By the term "Cal-OSHA provisions," we refer both to the specific sections of the Labor Code constituting Cal-OSHA (§ 6300 et seq.) and to the regulations and safety orders promulgated under Cal-OSHA.

regulation." We granted review to decide whether, and to what extent, the 1999 amendments repealed the ban on the admission of Cal-OSHA provisions in third party negligence actions. We conclude that the amendments restore the common law rule and allow use of Cal-OSHA provisions to establish standards and duties of care in negligence actions against private third parties.

However, this case involves a preamendment accident. The use of Cal-OSHA provisions to establish the standard of care and to shift the burden of proof to defendant was an impermissible retroactive application of the amendment, and the error was not harmless. We therefore affirm the Court of Appeal's reversal of judgment for plaintiff.

### PROCEDURAL AND FACTUAL BACKGROUND

On December 3, 1998, plaintiff Rowdy Elsner, a roofer employed by Hoffman Roofing, injured his right ankle when a scaffold collapsed beneath him at a construction site in the City of Coronado. Defendant Carl Uveges was the general contractor for the project, a pair of two-story single-family homes. The day before the accident, Sean Frey, a carpenter employed by Uveges, had constructed the temporary wood plank scaffold to assist his installation of plywood panels on the second story of the structure. Uveges acknowledged that he was directly responsible for supervising and controlling the work in order to ensure required safety practices were followed.

Elsner sued Uveges and Uveges's joint venturer on the project, asserting causes of action for negligence, premises liability, breach of nondelegable duty, failure to provide a safe place of work, and peculiar risk.[3] In January 2001, before trial, Uveges moved in limine for an order excluding references to Cal-OSHA provisions and their alleged violation. He argued that under section 6304.5, testimony that the scaffolding violated Cal-OSHA provisions was inadmissible for any purpose in an employee's third party action. (See *Spencer v. G. A. MacDonald Constr. Co.* (1976) 63 Cal.App.3d 836, 857–858 [134 Cal.Rptr. 78]; *Mackey v. Campbell Construction Co.* (1980) 101 Cal.App.3d 774, 790 [162 Cal.Rptr. 64].) The trial court denied the motion. It ruled that as a result of the 1999 amendments to section 6304.5, which took effect January 1, 2000, Cal-OSHA provisions were now admissible in a third party action.

The matter proceeded to jury trial against Uveges only. Based on its in limine ruling, the court permitted testimony by Elsner's expert as to how the scaffold violated Cal-OSHA provisions. Having granted a separate evidentiary

---

[3] State Compensation Insurance Fund (State Fund) intervened in the lawsuit, seeking reimbursement for workers' compensation benefits paid to Elsner.

motion made by Elsner during trial, the court also prevented Uveges from eliciting expert testimony that the scaffold as constructed was customary and met the standard of care for such construction jobs. It gave the jury special instructions based on duties created by the Labor Code (§§ 6400, 6401 & 6403)[4] and Cal-OSHA regulations setting standards for the nailing, anchoring, size, and railing of scaffolds (Cal. Code Regs., tit. 8, §§ 1513, 1637, 1640). The court then instructed the jury on the principles of negligence per se.[5]

The jury returned a special verdict finding Uveges 100 percent negligent and his negligence a cause of Elsner's injuries. It found Elsner's employer not negligent.[6] The jury awarded Elsner $131,254 in economic damages, $500,000 in noneconomic damages, and costs. It awarded State Fund $52,867.71.

On appeal, Uveges argued that notwithstanding the 1999 amendments to section 6304.5, the admission of testimony concerning applicable Cal-OSHA provisions, the exclusion of Uveges's expert's testimony, and the issuance of jury instructions based on negligence per se were error. The Court of Appeal agreed and reversed. It concluded that when the Legislature amended section 6304.5, it did not intend to change the existing rule against admitting Cal-OSHA provisions in third party actions to establish negligence per se. We granted review.

---

[4] The special instructions based on sections 6400, 6401 and 6403 respectively provided:

"Every employer shall furnish employment and a place of employment . . . that is safe and healthful for the employees therein . . . ."

"Every employer shall furnish and use safety devices and safeguards, and shall adopt and use practices, means, methods, operations, and processes which are reasonably adequate to render such employment and place of employment safe and healthful. Every employer shall do every other thing reasonably necessary to protect the life, safety, and health of employees."

"No employer shall fail or neglect to do any of the following: [¶] (a) To provide and use safety devices and safeguards reasonably adequate to render the employment and place of employment safe. [¶] (b) To adopt and use methods and processes reasonably adequate to render the employment and place of employment safe. [¶] (c) To do every other thing reasonably necessary to protect the life, safety, and health of employees."

[5] The court gave a modified version of BAJI No. 3.45: "If you find that a party to this action violated Labor Code sections 6400, 6401, 6403, 7151, [Cal-]OSHA Regulations 1513, 1637 and/or 1640, the statutes and regulations just read to you[,] and that any such violation was a cause of injury to another, you will find that such violation was negligence unless defendant proves by a preponderance of the evidence that he did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law. In order to sustain such burden of proof, such party must prove by a preponderance of the evidence that he was faced with circumstances which prevented compliance or justified noncompliance with the statute or regulation."

[6] The jury made a finding with respect to Elsner's employer's conduct in order to establish whether that conduct might limit reimbursement to State Fund of workers' compensation benefits State Fund had paid out. (See *Associated Construction & Engineering Co. v. Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 829, 842 [150 Cal.Rptr. 888, 587 P.2d 684].)

DISCUSSION

## I. Interpretation of Section 6304.5

### A. *Statutory Background*

The provisions of Cal-OSHA are intended to "assur[e] safe and healthful working conditions for all California working men and women by authorizing the enforcement of effective standards, assisting and encouraging employers to maintain safe and healthful working conditions, and by providing for . . . enforcement in the field of occupational safety and health." (§ 6300.) Until 1971, these provisions were routinely admitted in workplace negligence actions to show the standard of care, and their violation was treated as negligence per se. (See, e.g., *De Cruz v. Reid* (1968) 69 Cal.2d 217, 229–230 [70 Cal.Rptr. 550, 444 P.2d 342]; *Kuntz v. Del E. Webb Constr. Co.* (1961) 57 Cal.2d 100, 103–104 [18 Cal.Rptr. 527, 368 P.2d 127]; *Porter v. Montgomery Ward & Co., Inc.* (1957) 48 Cal.2d 846, 847, 850 [313 P.2d 854]; *Armenta v. Churchill* (1954) 42 Cal.2d 448, 455 [267 P.2d 303].)

In 1971, the Legislature enacted section 6304.5, which originally provided: "It is the intent of the Legislature that the provisions of this division shall only be applicable to proceedings against employers brought pursuant to the provisions of Chapter 3 (commencing with Section 6500) and 4 (commencing with Section 6600) of Part 1 of this division for the exclusive purpose of maintaining and enforcing employee safety. [¶] Neither this division nor any part of this division shall have any application to, nor be considered in, nor be admissible into, evidence in any personal injury or wrongful death action arising after the operative date of this section, except as between an employee and his own employer." (Stats. 1971, ch. 1751, § 3, p. 3780.) Thereafter, both this court and the Courts of Appeal consistently held that section 6304.5 barred the introduction of Cal-OSHA provisions in actions between employees and third party tortfeasors. (See, e.g., *Griesel v. Dart Industries, Inc.* (1979) 23 Cal.3d 578, 588 [153 Cal.Rptr. 213, 591 P.2d 503]; *Felmlee v. Falcon Cable TV* (1995) 36 Cal.App.4th 1032, 1039 [43 Cal.Rptr.2d 158].)

In 1999, the Legislature passed Assembly Bill No. 1127 (1999–2000 Reg. Sess.), which substantially amended section 6304.5 and various other provisions of the Labor Code relating to worker safety. As amended, section 6304.5 now provides: "It is the intent of the Legislature that the provisions of this division, and the occupational safety and health standards and orders promulgated under this code, are applicable to proceedings against employers for the exclusive purpose of maintaining and enforcing employee safety. [¶] Neither the issuance of, or failure to issue, a citation by the division shall have any application to, nor be considered in, nor be admissible into,

evidence in any personal injury or wrongful death action, except as between an employee and his or her own employer. Sections 452 and 669 of the Evidence Code shall apply to this division and to occupational safety and health standards adopted under this division in the same manner as any other statute, ordinance, or regulation. The testimony of employees of the [D]ivision [of Occupational Safety and Health] shall not be admissible as expert opinion or with respect to the application of occupational safety and health standards. It is the intent of the Legislature that the amendments to this section enacted in the 1999–2000 Regular Session shall not abrogate the holding in Brock v. State of California (1978) 81 Cal.App.3d 752." We must determine the effect of these amendments.

### B. *Statutory Interpretation*

■ In interpreting section 6304.5, we seek to " 'ascertain the Legislature's intent so as to effectuate the purpose of the law.' " (*In re J.W.* (2002) 29 Cal.4th 200, 209 [126 Cal.Rptr.2d 897, 57 P.3d 363].) We begin with the language of section 6304.5. (See *Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 977 [90 Cal.Rptr.2d 260, 987 P.2d 727]; *People v. Cruz* (1996) 13 Cal.4th 764, 775 [55 Cal.Rptr.2d 117, 919 P.2d 731].)

■ The key sentence of Labor Code section 6304.5 is in its second paragraph: "Sections 452 and 669 of the Evidence Code shall apply to this division and to occupational safety and health standards adopted under this division in the same manner as any other statute, ordinance, or regulation." Evidence Code section 452 allows judicial notice of state statutes and regulations. (Evid. Code, § 452, subd. (a).) Evidence Code section 669 allows proof of a statutory violation to create a presumption of negligence in specified circumstances.[7] It codifies the common law doctrine of negligence per se, pursuant to which statutes and regulations may be used to establish duties and standards of care in negligence actions.[8] While adding this

---

[7] Evidence Code section 669, subdivision (a) provides: "The failure of a person to exercise due care is presumed if: [¶] (1) He violated a statute, ordinance, or regulation of a public entity; [¶] (2) The violation proximately caused death or injury to person or property; [¶] (3) The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and [¶] (4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted." Subdivision (b) sets out the showing required of a defendant to rebut this presumption.

[8] Some courts and commentators use "negligence per se" to refer globally to the borrowing of statutory standards in negligence actions. Examined with care, however, it actually consists of two distinct, albeit occasionally overlapping, concepts. Statutes may be borrowed in the negligence context for one of two purposes: (1) to establish a duty of care, or (2) to establish a standard of care. (*California Service Station etc. Assn. v. American Home Assurance Co.* (1998) 62 Cal.App.4th 1166, 1177–1179 [73 Cal.Rptr.2d 182]; see *Vesely v. Sager* (1971) 5

language, the amendments to Labor Code section 6304.5 also deleted language precluding admission of Cal-OSHA provisions in third party actions, eliminating a sentence that read: "Neither this division nor any part of this division shall have any application to, nor be considered in, nor be admissible into, evidence in any personal injury or wrongful death action arising after the operative date of this section, except as between an employee and his own employer." (§ 6304.5, as added by Stats. 1971, ch. 1751, § 3, p. 3780, deleted by Stats. 1999, ch. 615, § 2.)

■ In combination, the new language and the deletion indicate that henceforth, Cal-OSHA provisions are to be treated like any other statute or regulation and may be admitted to establish a standard or duty of care in all negligence and wrongful death actions, including third party actions.

Nevertheless, Uveges argues that the references to Evidence Code sections 452 and 669 serve a far more limited purpose. He contends that Assembly Bill No. 1127 (1999–2000 Reg. Sess.) (Assembly Bill No. 1127) was an omnibus workers' compensation reform bill, that the first paragraph of amended Labor Code section 6304.5[9] confines admissibility of Cal-OSHA provisions to actions against employers, and that the references in the second paragraph to Evidence Code sections 452 and 669 were intended only to make those sections applicable to workers' compensation actions and Cal-OSHA administrative proceedings against employers. He points out that the references to these Evidence Code sections replaced an earlier proposed amendment providing: "This division and the occupational safety and health standards and orders promulgated under this code may have application to, be considered in, or be admissible into, evidence in any personal death or wrongful death action." (Assem. Bill No. 1127, § 2, as amended in Sen., Aug. 23, 1999.) Uveges argues, and the Court of Appeal agreed, that the deletion of clear language admitting Cal-OSHA provisions in third party actions reflected a desire to return to the pre-1999 rule of inadmissibility. We disagree.

■ First, Uveges's interpretation is at odds with the plain language of section 6304.5. Unlike the pre-1999 version, the current first paragraph does not say that Cal-OSHA provisions are admissible *only* in actions against employers. Nor does the second paragraph contain any language suggesting

---

Cal.3d 153, 157, 166–167 [95 Cal.Rptr. 623, 486 P.2d 151] [borrowing statutory duty of care]; *Satterlee v. Orange Glenn School Dist.* (1947) 29 Cal.2d 581, 592 [177 P.2d 279] [borrowing statutory standard of care].)

[9] "It is the intent of the Legislature that the provisions of this division, and the occupational safety and health standards and orders promulgated under this code, are applicable to proceedings against employers for the exclusive purpose of maintaining and enforcing employee safety." (§ 6304.5.)

that its effect is limited to workers' compensation suits or Cal-OSHA administrative proceedings.

Second, Uveges's interpretation is belied by the legislative history and purpose behind the 1999 amendments. To the extent a statutory text is susceptible of more than one reasonable interpretation, we will consider " 'a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.' " (*Wilcox v. Birtwhistle, supra,* 21 Cal.4th at p. 977, quoting *People v. Woodhead* (1987) 43 Cal.3d 1002, 1008 [239 Cal.Rptr. 656, 741 P.2d 154].)[10] Had the Legislature truly intended to reverse course and leave in place a general ban against admission of Cal-OSHA provisions, one would have expected it to drop the amendment entirely and simply revert to the original language of the statute, as it did for numerous other sections in the course of its consideration of Assembly Bill No. 1127.[11] It did not. Instead, both the preliminary and final versions of the amendment deleted the original language, language that had imposed a ban in clear and unmistakable terms. Notwithstanding the August 23 revision in wording, the Legislative Counsel's Digest accompanying the final chaptered bill still described the amendment to section 6304.5 as a departure from pre-1999 law excluding Cal-OSHA provisions. (Legis. Counsel's Dig., Assem. Bill No. 1127, Stats. 1999, ch. 615.)

■ Moreover, contrary to Uveges's assertion, Assembly Bill No. 1127 was not an omnibus workers' compensation reform bill, but an omnibus measure intended to increase civil and criminal sanctions against those who maintain unsafe working conditions. A series of fatal industrial accidents provided the impetus for the bill. (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 1127, as amended Aug. 16, 1999, p. 9.) Assemblyman Darrell Steinberg introduced the bill as a worker health and safety measure designed to prevent injuries and close loopholes in various laws relating to workplace safety standards. (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1127, as introduced Feb. 25, 1999.) To that end, the bill strengthened civil, criminal, and administrative enforcement mechanisms for

---

[10] Elsner's request that we take judicial notice of the legislative history of Assembly Bill No. 1127 is granted. (Evid. Code, §§ 452, subd. (c), 459.)

[11] For example, the original version of Assembly Bill No. 1127 included revisions to sections 6302, 6308, 6315.5, 6317, 6323–6325, 6427 and 6435. (Assem. Bill No. 1127, §§ 2, 4, 6–10, 16, 22, as introduced Feb. 25, 1999.) By the time the final version was passed, the Legislature had eliminated any changes to these provisions. (Assem. Bill No. 1127, as amended Sept. 3, 1999, p. 1.)

ensuring workplace safety. (*Ibid.*)[12] The Los Angeles County District Attorney, a bill cosponsor, pushed for a repeal of the ban on using Cal-OSHA provisions in wrongful death and personal injury lawsuits, and the repeal was included as part of the expansion of civil remedies available for violation of safety standards. The net effect of the proposed reforms was to increase significantly the sanctions available against those in control of workplace safety, with the goal of deterring unsafe practices and reducing the number and severity of future accidents. This overall purpose is consistent with our reading of the plain language of the amendments as allowing Cal-OSHA provisions in third party suits and thereby facilitating private suits against workplace tortfeasors. (See *Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196].)

■ Third, Uveges's interpretation is inconsistent with the structure of section 6304.5, which addresses public administrative proceedings in the first paragraph and private court actions in the second paragraph. As originally adopted, the first paragraph allowed the Division of Occupational Safety and Health to introduce Cal-OSHA provisions when proving employer violations.[13] (See, e.g., *In re A. Ritter Plastering, Inc.* (Feb. 11, 1992) No. 91-R4D1-041, 1992 Cal. OSHA App. Bd. LEXIS 30; *In re Hudson Plastering Co., Inc.* (Nov. 19, 1987) Nos. 85-R1D2-1271, 1476, 1987 Cal. OSHA App. Bd. LEXIS 8.) In contrast, the second paragraph governed private actions by injured parties and prohibited use of those same Cal-OSHA provisions except against one's own employer.[14] (See, e.g., *Spencer v. G. A. MacDonald Constr. Co., supra,* 63 Cal.App.3d at pp. 854–858.)

---

[12] This focus did not shift during the amendment process. As finally enacted, Assembly Bill No. 1127 increased the maximum criminal penalty for certain Cal-OSHA violations from six months and $5,000 to one year and $15,000, with new corporate penalties of up to $150,000 (§ 6423); changed willful violation of a Cal-OSHA provision causing death or prolonged impairment from a misdemeanor to a wobbler (first offense) or felony (second offense), with new corporate penalties of up to $3.5 million (§ 6425); increased maximum civil penalties for serious violations from $7,000 per day to $25,000 per day (§ 6428); and substantially broadened the definition of serious violations that would qualify for enhanced sanctions (§ 6432), along with numerous other changes in similar veins. (Stats. 1999, ch. 615, §§ 5–7, 10.)

[13] "It is the intent of the Legislature that the provisions of this division shall only be applicable to proceedings against employers brought pursuant to the provisions of Chapter 3 (commencing with Section 6500) and 4 (commencing with Section 6600) of Part 1 of this division for the exclusive purpose of maintaining and enforcing employee safety." (Stats. 1971, ch. 1751, § 3, p. 3780.) Chapter 3 governed Cal-OSHA administrative hearings and orders, while chapter 4 governed administrative rehearings and judicial review.

[14] "Neither this division nor any part of this division shall have any application to, nor be considered in, nor be admissible into, evidence in any personal injury or wrongful death action arising after the operative date of this section, except as between an employee and his own employer." (Stats. 1971, ch. 1751, § 3, p. 3780.)

■ The 1999 amendments retained this subject matter division. Assembly Bill No. 1127 left in place the first paragraph's broad rule of admissibility for Cal-OSHA provisions in public administrative enforcement proceedings.[15] In contrast, the bill substantially revised the second paragraph's rules for private actions by injured parties. It deleted the clause admitting Cal-OSHA provisions in first party suits by employees against their own employers but excluding Cal-OSHA provisions from third party suits.[16] The bill retained the distinction between private first party and third party suits, but only for the issuance or failure to issue a citation: "Neither the issuance of, or failure to issue, a citation by the [D]ivision [of Occupational Safety and Health] shall have any application to, nor be considered in, nor be admissible into, any personal injury or wrongful death action, except as between an employee and his or her own employer." (Assem. Bill No. 1127, § 3, as introduced Feb. 25, 1999.) This subject matter division indicates that the references to Evidence Code sections 452 and 669 relate to their use in private actions, not public enforcement proceedings.

■ Fourth, Uveges's suggested interpretation renders part of section 6304.5 superfluous. The issue of negligence does not arise in either the strict liability workers' compensation scheme or Cal-OSHA administrative enforcement proceedings, and thus a provision allowing application of negligence per se in those contexts would serve no real purpose. We will avoid constructions that render parts of a statute surplusage. (*Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 22 [56 Cal.Rptr.2d 706, 923 P.2d 1]; *Brown v. Superior Court* (1984) 37 Cal.3d 477, 484 [208 Cal.Rptr. 724, 691 P.2d 272].)

■ Instead, the most sensible explanation of the August 23 amendment is this: As originally drafted, the proposed amendment to section 6304.5 could have been interpreted to offer greater admissibility for Cal-OSHA provisions than for other statutes and regulations. Instead of simply restoring the pre-1971 state of affairs, under which statutes could be admitted to establish a presumption of negligence only when the requirements of Evidence Code section 669 were met, the original version of Assembly Bill No. 1127 would have provided an independent basis for admitting Cal-OSHA

---

[15] After Assembly Bill No. 1127 was introduced, the amended first paragraph for months sat side by side with a version of the second paragraph that admitted Cal-OSHA provisions in all private personal injury and wrongful death suits. If the first paragraph were intended to limit such admission to actions against employers, these provisions would have been mutually contradictory.

[16] The original committee bill analysis explained: "Under current law, government regulatory standards are generally admissible into evidence in negligence and wrongful death actions. They are typically used in such cases to establish a standard of care. In 1971, the Legislature barred the admission into evidence of occupational health and safety standards, and thereby created an exception to the general rule. This bill repeals that exception." (Assem. Com. on Labor and Employment, Analysis of Assem. Bill No. 1127, as introduced Feb. 25, 1999, p. 6.)

provisions whether or not these threshold criteria were met. The August 23 amendment cured that anomaly; consistent with the purpose articulated in an earlier bill summary, it effectively reextended to Cal-OSHA provisions the "usual rule of admissibility of statutes and regulations in court proceedings." (See Sen. Com. on Public Safety, Analysis of Assem. Bill No. 1127, as amended Aug. 16, 1999.) In doing so, the amendment also reextended the *limits* on admissibility, including the requirements that the exercise of due care be in issue, the statute actually apply to the defendant, the injured party be a member of the class the statute was intended to protect, and the injury result from an occurrence the statute was designed to prevent. (Evid. Code, § 669, subd. (a)(1), (3), (4).)

Uveges argues that a late change in the 1999 amendments precludes interpreting them as allowing admission of Cal-OSHA provisions in third party suits. On September 3, 1999, the Senate added a sentence stating: "It is the intent of the Legislature that the amendments to this section enacted in the 1999–2000 Regular Session shall not abrogate the holding in Brock v. State of California (1978) 81 Cal.App.3d 752." (Assem. Bill No. 1127, § 2, as amended in Sen., Sept. 3, 1999.) In *Brock*, the plaintiffs were injured in an explosion and fire at a paper plant. They sued numerous defendants, including the State of California. They contended that under Cal-OSHA, the state had a statutory duty to inspect facilities to ensure they were safe,[17] that it had breached that duty, and that the plaintiffs could maintain a tort action based on the breach. (*Brock v. State of California, supra*, 81 Cal.App.3d at pp. 754–755 (*Brock*).) The trial court sustained a demurrer, and the Court of Appeal affirmed. Relying on section 6304.5, the Court of Appeal rejected the plaintiffs' attempt to make any Cal-OSHA duty of inspection enforceable in tort: "[D]ay-to-day operating control over safety conditions rests with the employer alone. Since third parties, including the state, are not in control of such day-to-day operations . . . the Legislature sensibly limited the applicability of the [Cal-OSHA] safety provisions to actions involving employers alone." (*Brock*, at pp. 757–758.)

Uveges argues, and the Court of Appeal agreed, that the insertion of a reference to *Brock* was intended to reinstate the broad pre-1999 ban on admission of Cal-OSHA provisions against third parties to show negligence per se. In contrast, Elsner argues that the reference to *Brock* was intended not to negate the general repeal of that ban, but to preserve an exception for suits against the State of California based on the duty to inspect worksites and enforce safety rules; as to such suits, plaintiffs would still be precluded from using these statutory duties to support negligence liability. We conclude Elsner's narrower interpretation is correct.

---

[17] See, e.g., sections 6307, 6309, 6327.5.

First, when interpreting a statute, we must harmonize its various parts if possible, reconciling them in the manner that best carries out the overriding purpose of the legislation. (*Russell v. Stanford University Hospital* (1997) 15 Cal.4th 783, 789 [64 Cal.Rptr.2d 97, 937 P.2d 640].) An interpretation of the *Brock* clause as applying only to state duty suits avoids any contradictions with other parts of section 6304.5. If we were to interpret the *Brock* clause as preserving the general exclusion of Cal-OSHA provisions in third party suits, it would conflict with that portion of the statute admitting such provisions under Evidence Code sections 452 and 669. The narrow reading of the *Brock* clause is also consistent with the general purpose of Assembly Bill No. 1127, a measure intended to deter unsafe workplace practices by expanding sanctions for the violation of safety standards.

Second, Elsner's interpretation of "the holding in Brock" (§ 6304.5) is consistent with the line we have drawn between "holdings and mere descriptive language" (*Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1157 [278 Cal.Rptr. 614, 805 P.2d 873]). The holding of a case is coextensive with its particular facts. (*Ibid.*) Because under the facts of *Brock*, the only issue was whether the State of California could be sued for breach of its Cal-OSHA duties, *Brock*'s holding encompassed only the conclusion that the state could not be sued for any breach. The *Brock* court recited the language of former section 6304.5 in arriving at this conclusion (*Brock, supra,* 81 Cal.App.3d at p. 756), but under *Harris* this recitation of a relevant statute was descriptive language about the then extant state of the law, not a holding.

Third, this interpretation explains why the Legislature chose to reference *Brock*, of all cases. Had the Legislature intended to leave in place a general ban against admission of Cal-OSHA provisions, it might have simply reverted back to the original language of the statute or chosen any of a number of more frequently cited cases to stand for the general proposition that Cal-OSHA regulations are inadmissible. (See, e.g., *Griesel v. Dart Industries, Inc., supra,* 23 Cal.3d at p. 588; *Widson v. International Harvester Co.* (1984) 153 Cal.App.3d 45, 51–52 [200 Cal.Rptr. 136]; *Spencer v. G. A. MacDonald Constr. Co., supra,* 63 Cal.App.3d at p. 860.) Like Holmes's dog that did not bark,[18] the fact the Legislature did neither of these things is instructive and suggests that the aspects of *Brock* the Legislature intended to preserve are unique to that case. The one unique aspect of *Brock* is its holding that breach of the state's duty to enforce safety rules does not give rise to tort liability. (*Brock, supra,* 81 Cal.App.3d at pp. 757–758.)

---

[18] See Doyle, *Silver Blaze* in The Complete Sherlock Holmes (1960) page 347.

Fourth, the amendment's subsequent legislative history supports the conclusion that the *Brock* reference was not intended to change the rule allowing admission of Cal-OSHA provisions for purposes of negligence per se. After the Senate amended Assembly Bill No. 1127, the Assembly was required to concur in the changes. The Assembly Floor Analysis explained that under Assembly Bill No. 1127, as amended September 3, 1999, and passed by the Senate on September 7, 1999, the effect of the Senate amendments was to "[c]larify that [Cal-]OSHA statutes and regulations, but not citations or orders, may be admitted into evidence, in the same manner as other statutes and regulations." (Assem. Floor Analysis, Assem. Bill No. 1127, as amended Sept. 3, 1999, p. 1.)

After the Assembly passed Assembly Bill No. 1127, the Department of Industrial Relations submitted an enrolled bill report to the Governor reflecting the same understanding.[19] As explained by the enrolled bill report, the amendment to section 6304.5 "would change existing law to make statutes and regulations enforceable by the Division [of Occupational Safety and Health] admissible in personal injury and wrongful death lawsuits so that litigants in these actions could use these provisions as standards for determining negligence." (Dept. of Industrial Relations, Enrolled Bill Rep. on Assem. Bill No. 1127 prepared for Governor Davis (Sept. 1999) p. 1.) The enrolled bill report noted that *Brock, supra,* 81 Cal.App.3d 752, was the leading authority for excluding Cal-OSHA provisions establishing state mandatory duties from private lawsuits and concluded that the amendment relating to *Brock* was probably intended to retain this partial state immunity. We agree.

Finally, Uveges contends that the amendment of an entirely different section, section 6400, demonstrates the Legislature did not intend to change the existing ban. Assembly Bill No. 1127 also added section 6400, subdivisions (b) and (c), the latter of which provides: "It is the intent of the Legislature, in adding subdivision (b) to this section, to codify existing regulations with respect to the responsibility of employers at multiemployer worksites. Subdivision (b) of this section is declaratory of existing law and shall not be construed or interpreted as creating a new law or as modifying or changing an existing law." But this subdivision plainly refers only to the

---

[19] Uveges challenges Elsner's reliance on the enrolled bill report, arguing that it is irrelevant because it was prepared after passage. However, we have routinely found enrolled bill reports, prepared by a responsible agency contemporaneous with passage and before signing, instructive on matters of legislative intent. (See, e.g., *Lolley v. Campbell* (2002) 28 Cal.4th 367, 375–376 [121 Cal.Rptr.2d 571, 48 P.3d 1128] [Department of Industrial Relations enrolled bill report]; *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1399 [241 Cal.Rptr. 67, 743 P.2d 1323] [same]; *Yamaha Corp. v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 22–23 [78 Cal.Rptr.2d 1, 960 P.2d 1031]; *Lockheed Information Management Services Co. v. City of Inglewood* (1998) 17 Cal.4th 170, 184 [70 Cal.Rptr.2d 152, 948 P.2d 943].) Though we do not give great weight to the report, it is instructive here.

changes made to section 6400, subdivision (b), which codified an existing Cal-OSHA regulation (see Cal. Code Regs., tit. 8, § 336.10); it does not apply to any other section of Assembly Bill No. 1127. As discussed throughout the bill's legislative history, the purpose of the bill was to change existing law and specifically to expand civil and criminal penalties for failure to maintain a safe workplace. When the Legislature amends a statute, we will not presume lightly that it "engaged in an idle act." (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 634 [59 Cal.Rptr.2d 671, 927 P.2d 1175].) Thus, we reject the assertion that despite having substantially reworked the language of section 6304.5, the Legislature intended no change in the law.

Amici curiae on behalf of Uveges argue that our interpretation of Assembly Bill No. 1127 generates equal protection and due process problems because on the one hand, it allows an injured plaintiff to submit a Cal-OSHA provision as proof of the standard of care, while on the other, it prevents a defendant from submitting evidence that the Division of Occupational Safety and Health investigated and issued no citation. Amici curiae also complain that the statute unfairly permits employers, but not nonemployers, to submit proof that they were not cited for a violation. These comparisons are misleading. Assembly Bill No. 1127 is evenhanded, as it prevents nonemployer defendants from showing that no citation was issued but also prevents nonemployee plaintiffs from showing that a citation was issued. A legislative judgment was made that in third party cases such evidence, on either side, ought not to play a role in the jury's deliberations. Defendants have no constitutional entitlement to use such evidence, and its exclusion does not render unconstitutional an otherwise routine extension of the doctrine of negligence per se. Nor is there any constitutional infirmity in the differing treatment of first party cases; there too, the Legislature created a level playing field, allowing employers to introduce proof of no citation, but also allowing employees to introduce proof that a citation was issued, evidence from which nonemployers like Uveges are shielded.

We summarize our conclusions. The first paragraph of section 6304.5 addresses the applicability of Cal-OSHA provisions to administrative proceedings brought by the Division of Occupational Safety and Health against employers to enforce worker safety standards. The provisions of Cal-OSHA are broadly applicable to such proceedings. This paragraph has no bearing on actions such as the one in this case.

The second paragraph of section 6304.5 catalogues the rules for the admissibility of Cal-OSHA provisions in trial court personal injury and wrongful death actions. In general, plaintiffs may use Cal-OSHA provisions to show a duty or standard of care to the same extent as any other regulation

or statute, whether the defendant is their employer or a third party. The lone exception arises when the state is the defendant based on actions it took or failed to take in its regulatory capacity; in such cases, Cal-OSHA provisions remain inadmissible to show liability based on breach of the statutory duty to inspect worksites and enforce safety rules.

## II. Application of Section 6304.5

### A. *Retroactivity*

In this case, Elsner's expert testified to the content of various Cal-OSHA provisions for purposes of establishing the relevant standard of care. (Lab. Code, §§ 6400, 6401, 6403, 7151; Cal. Code Regs., tit. 8, §§ 1513, 1637, 1640.) The jury was instructed on the requirements of these Cal-OSHA provisions, instructed on the duties imposed by sections 6400, 6401 and 6403, and instructed on negligence per se. This testimony and these instructions were consistent with section 6304.5 as amended. However, Uveges contends the application of amended section 6304.5 to this case violates the presumption against the retroactive application of laws because the accident occurred before Assembly Bill No. 1127 took effect on January 1, 2000.[20]

■ New statutes are presumed to operate only prospectively absent some clear indication that the Legislature intended otherwise. (*Tapia v. Superior Court* (1991) 53 Cal.3d 282, 287 [279 Cal.Rptr. 592, 807 P.2d 434] (*Tapia*); *Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1207 [246 Cal.Rptr. 629, 753 P.2d 585]; *Aetna Cas. & Surety Co. v. Ind. Acc. Com.* (1947) 30 Cal.2d 388, 393 [182 P.2d 159] (*Aetna Casualty*).) However, this rule does not preclude the application of new procedural or evidentiary statutes to trials occurring after enactment, even though such trials may involve the evaluation of civil or criminal conduct occurring before enactment. (*Tapia*, at pp. 288–289.) This is so because these uses typically affect only future conduct—the future conduct of the trial. "Such a statute 'is not made retroactive merely because it draws upon facts existing prior to its enactment . . . . [Instead,] [t]he effect of such statutes is actually prospective in nature since they relate to the procedure to be followed in the future.' [Citations.] For this reason, we have said that 'it is a misnomer to designate [such statutes] as having retrospective effect.' " (*Id.* at p. 288.)

■ In deciding whether the application of a law is prospective or retroactive, we look to function, not form. (*Tapia, supra*, 53 Cal.3d at p. 289;

---

[20] Elsner argues that Uveges waived this issue by failing to raise it in his answer to the petition for review. (See Cal. Rules of Court, rules 28(c), 29.1(b)(3).) Uveges did not waive the issue. He raised the retroactivity issue in his opening brief in the Court of Appeal and again in his answer to the petition for review, and both parties briefed the issue on the merits. We may consider it.

*Aetna Casualty*, *supra*, 30 Cal.2d at p. 394.) We consider the effect of a law on a party's rights and liabilities, not whether a procedural or substantive label best applies. Does the law "change[] the legal consequences of past conduct by imposing new or different liabilities based upon such conduct[?]" (*Tapia*, at p. 291.) Does it "substantially affect[] existing rights and obligations[?]" (*Aetna Casualty*, at p. 395.) If so, then application to a trial of preenactment conduct is forbidden, absent an express legislative intent to permit such retroactive application. If not, then application to a trial of preenactment conduct is permitted, because the application is prospective.

The amendments to section 6304.5 were used in three ways in this case: to allow Cal-OSHA provisions to be introduced to establish a duty of care, to allow Cal-OSHA provisions to be introduced to establish the standard of care, and to allow the burden of proof to shift to Uveges once a violation of Cal-OSHA was found. We consider each in turn.

 The admission of provisions imposing broader duties on a defendant than existed under the common law expands the defendant's liability. It attaches tort liability to the violation of statutes and regulations that previously could give rise only to civil and criminal penalties. (See §§ 6317, 6423, 6425, 6427–6430.) Because such a use "impos[es] new or different liabilities based upon . . . [past] conduct" (*Tapia*, *supra*, 53 Cal.3d at p. 291), it is retroactive.

 Here, however, the admission of sections 6400, 6401 and 6403 did not expand Uveges's common law duty of care. These provisions imposed on Uveges the duty to furnish a safe place of employment, to use safe practices and procedures, and to provide and use appropriate safety devices and safeguards. (§§ 6400, 6401, 6403.) But Uveges already owed Elsner a common law duty to provide safe equipment: "[W]hen a hirer of an independent contractor, by negligently furnishing unsafe equipment to the contractor, affirmatively contributes to the injury of an employee of the contractor, the hirer should be liable to the employee for the consequences of the hirer's own negligence." (*McKown v. Wal-Mart Stores, Inc.* (2002) 27 Cal.4th 219, 225 [115 Cal.Rptr.2d 868, 38 P.3d 1094].) At trial, this case proceeded on a single theory: Uveges negligently furnished unsafe scaffolding that contributed to Elsner's injury. That Frey, Uveges's agent, constructed the scaffolding from which Elsner fell was undisputed. Also undisputed was that when Uveges furnished scaffolding for the construction project, he had a common law duty to furnish safe scaffolding. The principal issues were breach, causation, and comparative negligence: whether the scaffolding met the standard of care, whether any defects contributed to Elsner's injuries, and whether Elsner's

own conduct contributed to his injuries. Thus, Uveges cannot complain that the jury verdict in this case arose from a retroactive expansion of his duty of care.

We reach a different result with respect to the use of Cal-OSHA provisions to establish the standard of care and shift the burden of proof. *Morris v. Pacific Electric Railway Company* (1935) 2 Cal.2d 764 [43 P.2d 276] is instructive. In *Morris*, an automobile driver sued the defendant railway following a collision with one of the defendant's trains. The railway requested, and was erroneously denied, an instruction that if the plaintiff was speeding, he was contributorily negligent as a matter of law and was barred from recovery. (*Id.* at pp. 766–767.) Before this court, the plaintiff argued that any error was harmless because after the accident and trial the Legislature changed the presumption of negligence arising from speeding from a conclusive to a permissive one and shifted the burden of proof to the opposing party to prove that the driver was in fact negligent. (*Id.* at pp. 767–768.) We rejected the notion that these legislative changes were purely procedural and evidentiary and thus would apply prospectively to any retrial, rendering the error in the first trial harmless. Instead, we held that the defendant had a substantive right to have the case tried under the rules of negligence per se applicable at the time of the accident, and that the changes in the application of negligence per se—no longer letting the speed limit define the plaintiff's standard of care and shifting the burden of proof to the defendant—could not be applied retroactively to a preamendment accident. (*Id.* at pp. 768–769.)

The same principles and conclusions apply in this case, where the trial court instructed the jury on new postaccident rules with respect to the standard of care and burden of proof. Though superficially procedural and evidentiary, Assembly Bill No. 1127's new rules would, if applied here, change the legal consequences of Uveges's past conduct by making him potentially liable for conduct that might have satisfied the applicable 1998 common law standard of care but not specific Cal-OSHA provisions. To allow a jury in 2001 to decide whether Uveges had breached his duty of care in 1998 by considering Cal-OSHA provisions not previously admissible would be " 'to apply the new law of today to the conduct of yesterday.' " (*Fox v. Alexis* (1985) 38 Cal.3d 621, 626 [214 Cal.Rptr. 132, 699 P.2d 309], quoting *Pitts v. Perluss* (1962) 58 Cal.2d 824, 836 [27 Cal.Rptr. 19, 377 P.2d 83].)[21] Nothing in the text of Assembly Bill No. 1127 or its legislative history

---

[21] Moreover, it is well established that the use of a new statute or ordinance to measure whether preenactment conduct satisfied the standard of care is a retroactive, and generally impermissible, application of the statute or ordinance. (*Akins v. County of Sonoma* (1967) 67 Cal.2d 185, 194 [60 Cal.Rptr. 499, 430 P.2d 57]; *Salinero v. Pon* (1981) 124 Cal.App.3d 120, 132 [177 Cal.Rptr. 204]; *Zellers v. State of California* (1955) 134 Cal.App.2d 270, 276 [285 P.2d 962].) Though the Cal-OSHA provisions at issue were on the books in 1998, former section 6304.5 excluded them from consideration in evaluating the standard of care.

indicates that the Legislature intended retroactive application. Thus, application of amended section 6304.5 to this case was error.

### B. *Harmless Error Analysis*

We consider whether the error was harmless. We will not reverse a judgment unless "after an examination of the entire cause, including the evidence," it appears the error caused a "miscarriage of justice." (Cal. Const., art. VI, § 13.) In the case of civil state law error, this standard is met when "there is a reasonable probability that in the absence of the error, a result more favorable to the appealing party would have been reached." (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574 [34 Cal.Rptr.2d 607, 882 P.2d 298].)

The erroneous application of amended section 6304.5 to this case had four related effects on the evidence and instructions. First, it permitted Elsner's expert to testify that the scaffold violated Cal-OSHA provisions. Second, it precluded Uveges's expert from testifying that the scaffold met the industry standard of care for jobs of this nature, as the record establishes he was prepared to do; the trial court granted Elsner's motion in limine, excluding any testimony of industry custom and practice at odds with the requirements of Cal-OSHA provisions. Third, it permitted Elsner's attorney on cross-examination to extract the concession from Uveges's expert that the scaffold was constructed in violation of Cal-OSHA. Fourth, it resulted in the jury being instructed that if it found a Cal-OSHA violation, the burden was on Uveges to prove that he was not negligent because circumstances prevented compliance or justified noncompliance.

Elsner argues that testimony on industry custom and practice at odds with the applicable Cal-OSHA provisions was inadmissible in any event. He relies on the settled rule that "evidence of custom and practice may not be used to contravene a statutory duty of care." (*Hom v. Clark* (1963) 221 Cal.App.2d 622, 650 [35 Cal.Rptr. 11].) " 'We do not think that an established use or custom among men engaged in the same line of work can avail as against the positive requirements of the ordinance, or statute. In fact, a breach of a legal duty, or a duty imposed by law, comes within the very definition of negligence; and, if such be the proximate cause of an injury, it constitutes actionable negligence.' " (*Hurtel v. Albert Cohn, Inc.* (1936) 5 Cal.2d 145, 148–149 [52 P.2d 922], quoting *Stultz v. Thomas* (1921) 182 N.C. 470, 473 [109 S.E. 361]; see also *Shuff v. Irwindale Trucking Co.* (1976) 62 Cal.App.3d 180, 188 [132 Cal.Rptr. 897]; *Transamerica Title Ins. Co. v. Green* (1970) 11 Cal.App.3d 693, 702–703 [89 Cal.Rptr. 915]; *Anderson v. L. C. Smith Constr. Co.* (1969) 276 Cal.App.2d 436, 444 [81 Cal.Rptr. 73].)

 Under the current version of section 6304.5, this rule would require the exclusion of custom and practice testimony at odds with Cal-OSHA provisions. But the rule is subject to a limiting principle: it applies only to those statutes and ordinances that set out a duty or standard of care. Under former section 6304.5, Cal-OSHA provisions did not establish either duties or standards of care. Implicit in the Legislature's pre-1999 exclusion of these provisions from third party actions was a judgment that the provisions might set out standards different from or greater than the requisite common law standard of care—indeed, that the Division of Occupational Safety and Health ought to be free to adopt such stricter standards—but that those provisions would not establish or modify the applicable standard of care. It follows that until January 1, 2000, an industry could adopt a custom or practice that was consistent with the common law standard of care even though it fell afoul of applicable safety orders. (See *Spencer v. G. A. MacDonald Constr. Co., supra,* 63 Cal.App.3d at pp. 857–858.) Consequently, in cases involving pre-2000 accidents, evidence of such customs and practices would still be admissible, because it would not contradict any statutorily established standard of care.[22] Hence, the exclusion of expert testimony on custom and practice was error.

Thus, on the key question whether Uveges had breached the applicable standard of care, the trial court's rulings deprived the jury of a choice. Instead of having to decide between two experts who disagreed whether Uveges had satisfied the standard of care, the jury was presented with two experts who agreed the scaffolding violated Cal-OSHA provisions and thus (given Uveges's concession that nothing prevented him from complying with Cal-OSHA) that Uveges had breached the applicable standard of care. In effect, Uveges was deprived of the defense that the scaffold met the applicable standard of care. There is a reasonable probability that absent this error, a different outcome would have resulted.

---

[22] Bizarre consequences would arise were this not so. If Cal-OSHA provisions made inadmissible by former section 6304.5 could still be used to exclude any evidence of the reasonableness of practices that contradicted them, the result would be identical to admission of those provisions to set the standard of care—the precise outcome that, until 1999, was forbidden.

## DISPOSITION

For the foregoing reasons, we affirm the judgment of the Court of Appeal and remand the case for further proceedings consistent with this opinion.

George, C. J., Kennard, J., Baxter, J., Chin, J., Brown, J., and Moreno, J., concurred.

Respondent's petition for a rehearing was denied February 23, 2005.