[No. S177075. Jan. 24, 2011.]

OCTOVIANO CORTEZ, Plaintiff and Appellant, v.
LOURDES ABICH et al., Defendants and Respondents.

## COUNSEL

The Homampour Law Firm, Arash Homampour; and Stuart Sherman for Plaintiff and Appellant.

The Arkin Law Firm and Sharon J. Arkin for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiff and Appellant.

Early, Maslach & Van Dueck, John C. Notti, Paul A. Carron, James Grafton Randall; Greines, Martin, Stein & Richland, Robert A. Olson, Alana H. Rotter and Sheila A. Wirkus for Defendants and Respondents.

Fred J. Hiestand for The Civil Justice Association of California as Amicus Curiae on behalf of Defendants and Respondents.

## OPINION

**BAXTER, J.**—Under the California Occupational Safety and Health Act of 1973 (Cal-OSHA or the Act) (Lab. Code, § 6300 et seq.; all further unlabeled statutory references are to this code), employers are required to "furnish employment and a place of employment that is safe and healthful" for their employees. (§ 6400, subd. (a).) For purposes of the Act, "employment" is defined as "the carrying on of any trade, enterprise, project, industry, business, occupation, or work, *including all excavation, demolition, and construction work*, or any process or operation in any way related thereto, in which any person is engaged or permitted to work for hire, *except household domestic service*." (§ 6303, subd. (b), italics added.)

The narrow question before us is this: Does work rendered on a residential remodeling project in which significant portions of a house are

demolished and rebuilt, and new rooms are added, fall within the statutory "household domestic service" provision for employment excluded under the Act? Based on the plain meaning of the statutory language, we conclude the answer is no.

### Factual and Procedural Background

Octoviano Cortez (plaintiff) was seriously injured while working on a job at a house purchased and owned by Lourdes Abich, for her son, Omar Abich (collectively, defendants), to use as a residence. Plaintiff brought this action against defendants and the unlicensed contractor who hired him, Miguel Quezada Ortiz,[1] alleging causes of action for negligence (failure to warn and failure to make work area safe) and premises liability (negligence in ownership, maintenance, management, and operation of premises).

Defendants moved for summary judgment after the following facts were developed through discovery. Omar Abich personally obtained construction permits from the City of Pasadena for a remodeling project that would add over 750 square feet to the house. Although Omar Abich was not a general contractor and did not have a contractor's license, he designated himself as the "owner/builder" for the project and hired an architectural firm to draw up the necessary plans for approval by the Pasadena building department. The project entailed demolition of existing walls and a deck, addition of a new master bedroom and a new master bathroom, construction of a garage to replace a carport, an upgrade of the kitchen, removal of the existing roof and construction of a new roof, installation of new flooring, new toilets and sinks, and new paint.

Defendants contracted with a number of individuals and companies to work on the project, one of whom was Ortiz.[2] Defendants were unaware that Ortiz did not have a contractor's license, which they concede was required for the work. Defendants moved out of the house once the project was underway, and they did not supervise the work.

Ortiz hired plaintiff to work on the project, but the scope of that work is in dispute. For present purposes we accept plaintiff's contention he was hired to

---

[1] Ortiz's default was entered in April 2007, and he is not a party to these proceedings.

[2] Omar Abich's responses to plaintiff's special interrogatories indicate he hired various individuals and companies for landscaping demolition, house demolition, concrete demolition, deck removal, and demolition inside the entire house. He additionally hired others for house framing, roof framing, roof tiling, drywalling, stucco work, electrical services, flooring, custom carpentry, tiling, granite work, and painting.

help demolish the roof. When plaintiff arrived at the property, only the front part of the house remained; as for the back part of the house, the roof had been removed and "[t]he only thing that was left were the walls that were made out of brick." Plaintiff proceeded to collect debris from the demolition, then climbed onto the remaining part of the roof to help with its removal. Plaintiff took two steps and fell when a portion of it collapsed. He suffered a fractured spine.

In their motion for summary judgment, defendants contended they had no duty to warn plaintiff of the roof's condition because he went onto the roof on his own accord and any danger was open and obvious. They also argued the work safety requirements of Cal-OSHA did not apply to the residential remodeling project.

The trial court granted defendants' motion. As relevant here, the court determined as a matter of law that defendants were not plaintiff's employers, and that even if they were, defendants were homeowners, who were not required to comply with Cal-OSHA.

The Court of Appeal affirmed summary judgment for defendants. The court first concluded that, pursuant to section 2750.5, defendants must be regarded as plaintiff's employers with respect to potential tort liability. Nonetheless, it held as a matter of law that defendants' home improvement project fell within Cal-OSHA's "household domestic service" provision for employment excluded under the Act (§ 6303, subd. (b)), because the project was undertaken for the noncommercial purpose of enhancing defendants' personal enjoyment of their residence.

We granted plaintiff's petition for review of the Cal-OSHA issue.

## DISCUSSION

In certain circumstances, a worker who sustains an on-the-job injury is not subject to the exclusive remedy provisions of the workers' compensation law (§ 3200 et seq.), but may bring an action against his or her employer for damages. (E.g., §§ 3602, subd. (c), 3706; see *Zaragoza v. Ibarra* (2009) 174 Cal.App.4th 1012, 1022 [95 Cal.Rptr.3d 264].) Here, plaintiff does not seek recovery of workers' compensation benefits but has sued defendants in tort for alleged violations of the safety standards that Cal-OSHA imposes on employers.

Notably, defendants were not plaintiff's employers in the usual sense because they did not directly hire plaintiff to work on their home. Rather, defendants hired Ortiz, who in turn hired plaintiff. Notwithstanding this circumstance, the Court of Appeal determined that section 2750.5 rendered defendants the employers of plaintiff with respect to potential tort liability, because Ortiz was not licensed as a contractor. (See *Rosas v. Dishong* (1998) 67 Cal.App.4th 815, 822 [79 Cal.Rptr.2d 339].) Whether unlicensed contractors or their workers may or must be deemed the homeowners' employees under section 2750.5, either for purposes of tort liability generally or with regard to Cal-OSHA specifically, are difficult and unsettled questions in this court. (See *Ramirez v. Nelson* (2008) 44 Cal.4th 908, 916–917 [80 Cal.Rptr.3d 728, 188 P.3d 659]; *Fernandez v. Lawson* (2003) 31 Cal.4th 31, 39–44 [1 Cal.Rptr.3d 422, 71 P.3d 779] (conc. opn. of Brown, J.) (*Fernandez*); cf. *In re Jesse Ramirez Drywall* (Cal. O.S.H.A., Mar. 23, 1993, No. 93-R4D3-489) 1999 CA OSHA App.Bd. Lexis 55; *In re Commercial Diving* (Cal. O.S.H.A., Apr. 14, 1994, No. 91-R3D5-921) 1994 CA OSHA App.Bd. Lexis 28.) Defendants, however, neglected to seek review of these issues, so we do not resolve them here.

Assuming the Court of Appeal was correct in finding the requisite employment relationship under Cal-OSHA, we proceed to the question at hand, i.e., whether work on an extensive home remodeling project falls within the Act's "household domestic service" exclusion. (§ 6303, subd. (b).) We start with a brief overview of the statutory scheme.

A. *Overview of Cal-OSHA*

■ Cal-OSHA, codified in division 5 of the Labor Code, was enacted to assure safe and healthful working conditions for all California workers within its purview. (§ 6300.) To further this purpose, Cal-OSHA authorizes "the enforcement of effective standards, assisting and encouraging employers to maintain safe and healthful working conditions." (§ 6300.)

Under Cal-OSHA, the employment and place of employment provided to employees must be safe and healthful. (§ 6400, subd. (a).) Among other things, the employer must "furnish and use safety devices and safeguards," adopt methods and practices that are "reasonably adequate to render such employment and place of employment safe and healthful," and "do every other thing reasonably necessary to protect the life, safety, and health of employees." (§ 6401.) The employer must also "establish, implement, and maintain an effective injury prevention program" pursuant to the Act's terms. (§ 6401.7, subd. (a).) Moreover, "[e]very employer and every employee shall

comply with occupational safety and health standards . . . ," including "all rules, regulations, and orders" pursuant to the Act "which are applicable to his [or her] own actions and conduct." (§ 6407.)

Additionally, Cal-OSHA imposes specific responsibilities upon employers to provide information to employees and comply with recordkeeping requirements. For instance, employers must post information in their workplaces regarding employee protections and obligations under the Act. (§ 6408, subd. (a).) They must also file with the Department of Industrial Relations, Division of Labor Statistics and Research, the report of every statutorily designated physician regarding every occupational injury or occupational illness, and immediately report cases of serious injury, illness, or death. (§§ 6409, 6409.1.)

■ Not only are Cal-OSHA violations punishable by civil and/or criminal penalties (§ 6423 et seq.), but the Act specifies that "[s]ections 452 and 669 of the Evidence Code shall apply to this division and to occupational safety and health standards adopted under this division in the same manner as any other statute, ordinance, or regulation." (§ 6304.5.) This means that "Cal-OSHA provisions are to be treated like any other statute or regulation and may be admitted to establish a standard or duty of care in all negligence and wrongful death actions, including third party actions." (*Elsner v. Uveges* (2004) 34 Cal.4th 915, 928 [22 Cal.Rptr.3d 530, 102 P.3d 915].)

B. *Employment Under Cal-OSHA*

■ Does Cal-OSHA's definition of employment exempt work on a home remodeling project? This is a matter of legislative intent, and the rules governing our analysis are settled. We must ascertain the Legislature's intent so as to effectuate the purpose of the regulatory scheme. (*Elsner v. Uveges, supra*, 34 Cal.4th at p. 927.) In determining such intent, we look first to the words of the statute, " 'giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose.' " (*State Farm Mutual Automobile Ins. Co. v. Garamendi* (2004) 32 Cal.4th 1029, 1043 [12 Cal.Rptr.3d 343, 88 P.3d 71].) Although we give effect to a statute according to the usual, ordinary import of its language (*ibid.*; *Merrill v. Department of Motor Vehicles* (1969) 71 Cal.2d 907, 918 [80 Cal.Rptr. 89, 458 P.2d 33]), language that permits more than one reasonable interpretation allows us to consider "other aids, such as the statute's purpose, legislative history, and public policy." (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737 [21 Cal.Rptr.3d 676, 101 P.3d 563].)

■ As relevant to plaintiff's action, Cal-OSHA requires employers to "furnish employment and a place of employment that is safe and healthful for

the employees therein." (§ 6400, subd. (a).) Section 6303, subdivision (b), defines "employment" as "the carrying on of any trade, enterprise, project, industry, business, occupation, or work, *including all excavation, demolition, and construction work, or any process or operation in any way related thereto*, in which any person is engaged or permitted to work for hire, *except household domestic service*." (Italics added.)

Whether work on a home remodeling project constitutes employment excluded from Cal-OSHA's application hinges on the language italicized above. Plaintiff contends the first italicized phrase makes clear that defendants' project fell within the regulatory reach of Cal-OSHA. Conversely, defendants rely on the second italicized phrase to argue their project utilized "household domestic service" excepted from Cal-OSHA's application.

Because the labor for defendants' home remodeling project entailed "the carrying on of [a] . . . project . . . or work" that involved "demolition" and "construction work" in which plaintiff was "engaged or permitted to work for hire," it qualified as employment under section 6303, subdivision (b), unless the Legislature intended the term "household domestic service" to include residential remodeling projects involving demolition and construction work.

As we observed in *Fernandez, supra*, 31 Cal.4th 31, Cal-OSHA provides no definition of "household domestic service," and the relevant legislative history offers no guidance on its meaning. (*Fernandez*, at p. 36.) *Fernandez* traced the term to its appearance in the original 1913 predecessor to the current Act, and noted that, even then, " 'employment' excluded 'persons [who] are employed solely in . . . household domestic services.' " (*Fernandez*, at p. 36 [discussing Stats. 1913, ch. 176, § 51, p. 305].)

■ Upon reviewing the legislative history, *Fernandez* concluded that household domestic service refers to "a broad category of workers" and "implies duties that are personal to the homeowner, not those which relate to a commercial or business activity on the homeowner's part." (*Fernandez, supra*, 31 Cal.4th at p. 37.) Noting the term is generally understood "to include work both within *and* outside a residence," *Fernandez* relied on out-of-state decisional law and California wages and hours regulations to find that the term logically refers to all services related to the " 'maintenance' " of a private household or its premises, including gardening and tree trimming. (*Id.* at p. 36 [citing regulatory recognition that gardeners engage in a "household occupation[]"].) Accordingly, *Fernandez* concluded that noncommercial tree trimming falls within the scope of the household domestic service exception and that a homeowner who hires a person to perform such service is not subject to the Act's tree trimming regulations. (*Fernandez*, at pp. 36–38.) *Fernandez* further reasoned that "overwhelming public policy and practical

considerations" make it unlikely the Legislature intended Cal-OSHA's complex regulatory scheme to apply to a homeowner hiring a tree trimmer for a personal, noncommercial purpose. (*Fernandez*, at p. 37.)

Relying on *Fernandez*, defendants contend that a homeowner is exempt from Cal-OSHA *whenever* an employee performs services on the property for the homeowner's personal benefit and not for a commercial purpose. For the reasons below, we disagree.

First of all, *Fernandez* expressly and deliberately declined to address whether a homeowner is subject to Cal-OSHA for noncommercial projects other than tree trimming. (*Fernandez, supra*, 31 Cal.4th at p. 37.) Hence, *Fernandez* does not compel defendants' interpretation of the Act.

More to the point, the statutory language fails to support defendants' construction. Section 6303's definition of employment does not purport to categorically exempt all work performed for homeowners regardless whether excavation, demolition, or construction is involved. Rather, the statute defines employment broadly as including "the carrying on of *any* . . . project . . . or work, including *all* excavation, demolition, and construction work, or *any* process or operation *in any way* related thereto, in which *any* person is engaged or permitted to work for hire," and exempts only a specific type of activity: household domestic service. (§ 6303, subd. (b), italics added.)

As an activity, household domestic service is commonly associated with services relating to the *maintenance* of a household or its premises (see *Fernandez, supra*, 31 Cal.4th at p. 36) and does not connote work contracted for in connection with an extensive home remodeling project for which a building permit must be issued, significant portions of the house are demolished and rebuilt, and entirely new rooms are framed and constructed. Indeed, unlike tree trimming, the types of labor typically entailed in an extensive remodeling project appear to fall outside state regulatory categories for household occupations or services of a household nature. (E.g., Cal. Code Regs., tit. 8, § 11150, subd. 2(I); *id.*, tit. 22, § 629-1, subd. (b).)[3] That is

---

[3] Regulations pertaining to wages, hours, and working conditions define "household occupations" as meaning "all services related to the care of persons or *maintenance* of a private household or its premises by an employee of a private householder. Said occupations shall include, but not be limited to, the following: butlers, chauffeurs, companions, cooks, day workers, gardeners, graduate nurses, grooms, house cleaners, housekeepers, maids, practical nurses, tutors, valets, and other similar occupations." (Cal. Code Regs., tit. 8, § 11150, subd. 2(I), italics added.)

Regulations implementing provisions of the Unemployment Insurance Code specify that " '[d]omestic service in a private home' " includes "service of a household nature performed by an employee in or about a private home in connection with the *maintenance* of the private home or premises, or for the comfort and care of the individual or family, as distinguished

hardly surprising, inasmuch as the labor and skills characteristically necessary for such a project are not functionally equivalent to those generally regarded as sufficient for the ordinary operation or maintenance of a private household or its premises. (See *Fernandez, supra,* 31 Cal.4th at p. 36.) Moreover, the worksite conditions associated with residential demolition, construction, and large-scale improvements can be ongoing for months, and are often vastly more hazardous than the conditions typically associated with regular household maintenance.[4]

Our conclusion is consistent with *Crockett v. Industrial Acc. Com.* (1923) 190 Cal. 583 [213 P. 969] (*Crockett*), which addressed household domestic service in the related context of workers' compensation. In *Crockett,* an employer sought to annul an award of compensation benefits for an injury a worker sustained while sweeping cobwebs in the employer's residence. The Industrial Accident Commission had based its award on the following findings of fact. P.M. Crockett hired J.B. Smith as a carpenter to assist him in converting a barn structure into a residence. Crockett and his family lived in the structure during the conversion, although it was not then entirely habitable. While employed by Crockett, Smith worked primarily as a carpenter, but he performed other incidental jobs when requested, such as transporting lumber, cleaning debris as portions of the old barn were torn down, unloading furniture, and cleaning out cobwebs. One day, Crockett specifically instructed Smith as to the carpentry work desired, and then directed Smith to do whatever Crockett's wife might demand of him. Smith was engaged in his carpentry work when the wife asked him to clean away the cobwebs and dirt that covered the floor joists above an area where she wished to set a stove. As Smith did so, dirt fell into his right eye and severely injured it. (*Id.* at pp. 584–585.)

---

from service which is directly related to the business or career of the employer." (Cal. Code Regs., tit. 22, § 629-1, subd. (a), italics added.) As used above, " '[s]ervice of a household nature' " includes "service customarily rendered by cooks, waiters, butlers, housekeepers, governesses, maids, valets, baby sitters, janitors, laundresses, furnacemen, caretakers, handymen, gardeners, and by chauffeurs of automobiles, crews of private yachts, and pilots of private airplanes for family use" but does *not* include "service performed by private secretaries, tutors, librarians, or musicians, or by carpenters, plumbers, electricians, painters or other skilled craftsmen." (Cal. Code Regs., tit. 22, § 629-1, subd. (b).)

While these two types of employment regulations differ from each other in certain material respects, they both view the concept of household occupations or service as specifically pertaining to the "maintenance" of the private household or its premises, or the care of the householder's family. (See Cal. Code Regs., tit. 8, § 11150, subd. 2(I); *id.,* tit. 22, § 629-1, subd. (a).)

[4] Thus, whether a home remodeling project extends beyond mere household maintenance will generally depend on the totality of the circumstances, including but not limited to, the scope of the project and the extent to which it involves significant demolition and construction work, the labor and skills required for the project, the need for building and/or other construction permits, and the extent to which those hired for the project are subject to state licensing requirements.

In seeking to annul the benefits award, Crockett contended that "when Smith stopped his carpentry work and began sweeping off the floor joists he departed from his regular duties and engaged in household domestic service . . . ," which fell within the rule of excluded employment as provided under the former workers' compensation law. (*Crockett, supra,* 190 Cal. at p. 585; see Stats. 1917, ch. 586, § 8(a), p. 835 [defining "employee" in part as excluding any person "engaged in household domestic service"].)[5] *Crockett* rejected that contention, first observing that when Crockett hired Smith, "he had in contemplation the remodeling and reconstruction of the old barn" and that his real intention was that "Smith should do whatever was necessary and incidental to the work at hand." (*Crockett,* at p. 586.) *Crockett* concluded the commission reasonably found as a factual matter that Smith was injured while performing services growing out of and incidental to his employment on the residential remodeling project, and that Smith had not departed from his regular carpentry duties to engage in household domestic service. (*Id.* at pp. 585–586.)

Significantly, there appeared no question in *Crockett* that household domestic service was not at issue with regard to Smith's work as a carpenter in the conversion of the barn structure to a private residence. Although not dispositive on the point, *Crockett* supports our conclusion that the term is commonly understood as excluding employment in extensive residential construction and remodeling.

Defendants next urge us to follow the lead of *Rogers v. Irving* (1997) 85 Wn.App. 455 [933 P.2d 1060], which determined that a homeowner who hired a roofing contractor had no duty to comply with certain safety standards under the Washington Industrial Safety and Health Act. That decision, however, analyzed an issue not presented here, i.e., whether a homeowner qualified as an "employer" under the statutory scheme (see *ante,* at p. 291); it did not address whether roofing work performed as part of a large-scale residential remodeling project qualified as a household domestic service. Accordingly, defendants' reliance on *Rogers* is misplaced.[6]

---

[5] The current Workers' Compensation Act does not retain this exclusion. (Compare §§ 3351, subd. (d), 3352, subd. (h), with Stats. 1917, ch. 586, § 8(a), p. 835.)

[6] Defendants' other out-of-state authorities are likewise unpersuasive in the context of this case. (E.g., *Hottmann v. Hottmann* (1997) 226 Mich.App. 171 [572 N.W.2d 259] [Mich. Occupational Safety and Health Act contemplates paid employment and did not apply where an individual helped his brother to install a new roof without expectation of payment]; *Geiger v. Milwaukee Guardian Ins. Co.* (1994) 188 Wis.2d 333 [524 N.W.2d 909] [attorney's occasional work at home did not render his residence a "place of employment" subject to Wisconsin's safe-place statute]; *Stenvik v. Constant* (Minn.Ct.App. 1993) 502 N.W.2d 416 [the Minn. Occupational Safety and Health Act did not govern casual contracting relationship that arose when a homeowner hired a longtime acquaintance to do siding work on a second house that he intended to rent or sell].)

Defendants also identify various public policy reasons for not applying Cal-OSHA to homeowners. First, they argue, it would be unprecedented to impose duties on homeowners that they have no reason to expect and are ill-equipped to handle. Second, requiring homeowners to comply with Cal-OSHA standards would make them subject to reporting duties and expose them to criminal prosecution and liability if violations occur. (See, e.g., §§ 6409.2, 6423.) Third, significant inequity would result because, although an unlicensed contractor is not legally entitled to payment (Bus. & Prof. Code, § 7031), it is possible under Cal-OSHA that an unlicensed worker could refuse to work if he or she encountered any "real and apparent hazard," yet still be entitled to payment from the homeowner (Lab. Code, § 6311). Fourth, application of Cal-OSHA to homeowners would impinge on their constitutional right of privacy because their homes would be subject to inspection without advance notice (Lab. Code, § 6321) or probable cause in the constitutional sense.

Plaintiff counters that, as a matter of public policy, a homeowner who opts to obtain construction permits as an owner/builder—effectively assuming the role of an unlicensed general contractor—should not be relieved from the obligation to comply with laws designed to protect the workers he or she employs.[7] In his view, requiring Cal-OSHA compliance for residential remodeling projects involving construction and demolition would serve the legislative goal of "deterring unsafe practices and reducing the number and severity

---

[7] California's Department of Consumer Affairs Contractors' State License Board (CSLB) maintains a Web site that includes the following general information about the risks of being an owner/builder. First, "[a]n owner/builder is what the term indicates. The person owns the property and acts as their own general contractor on the job and either does the work themselves or has employees (or subcontractors) working on the project." (<http://www.cslb.ca.gov/Consumers/KnowRisksofOwnerBuilder/WhatAnOwnerBuilderIs.asp> [as of Jan. 24, 2011].) Second, "[w]hen you sign a building permit application as an owner/builder, you assume full responsibility for all phases of your project and its integrity. You must pull all building permits. Your project must pass codes and building inspections." Additionally, "[a]n owner/builder is also responsible for supervising, scheduling and paying subcontractors. If you use anyone other than your immediate family or a licensed subcontractor for work, you may be considered an 'employer.'" (<http://www.cslb.ca.gov/Consumers/KnowRisksOfOwnerBuilder/TheResponsibilitiesOfAnOwnerBuilder.asp> [as of Jan. 24, 2011].)

Amicus curiae Consumer Attorneys of California suggests that a rule requiring Cal-OSHA compliance would not catch homeowners by surprise, inasmuch as the CSLB Web site already posts the following warning to potential owner/builders: "If your workers are injured, or your subcontractors are not licensed or do not carry liability insurance or worker's compensation and they are injured, you could be asked to pay for injuries and rehabilitation through your homeowner's insurance policy or face lawsuits." (<http://www.cslb.ca.gov/Consumers/KnowRisksOfOwnerBuilder/TheDownsideOfBeingAnOwnerBuilder.asp> [as of Jan. 24, 2011].)

Amicus curiae also contends such a rule would not be unduly onerous for homeowners, as the CSLB also provides a consumer Web site making it easy to check the license status of any

of future accidents" when property owners engage in such projects with lower cost unlicensed contractors and workers. (*Elsner v. Uveges, supra*, 34 Cal.4th at p. 930.) Conversely, exempting such work from Cal-OSHA's application would allow homeowners to take unsafe risks and expose workers to grave harm while at the same time avoiding any real accountability.

It may be that policy considerations are relevant in assessing the broader and more complex issue whether a homeowner may or must be deemed an employer under section 2750.5, either for purposes of tort liability generally or with regard to Cal-OSHA specifically. For now, however, we need only address the meaning of the term "household domestic service." Because the usual and ordinary import of that term excludes work performed on a remodeling project calling for the demolition and rebuilding of significant portions of a house and the construction of new rooms, we will not consider whether public policy supports a rule restricting Cal-OSHA's application to homeowners as possible statutory employers.

Finally, defendants contend that for home improvement projects, the question whether an employee's work falls within the household domestic service exemption should turn on the nature of his or her work duties taken in isolation, regardless whether those duties were part and parcel of a larger remodeling project. We disagree.

Defendants cite no authority for the proposition that the worksite of a home remodeling project may serve as a place of employment for some of the employees hired to work on the project, but not for others hired to work on the same project. It may be that a job or work assignment falling within the technical scope of an extensive remodeling project is sufficiently independent therefrom to be considered separately as a household domestic service. In this case, however, we need not exhaustively explore the factors properly marking such an analysis, because the record discloses no need to do so. Assuming for purposes of argument that plaintiff's work involved a household domestic service if undertaken as a single project, there is no indication he was hired or rendered his service independently of the larger remodeling project, in either spatial or temporal terms, or otherwise. Rather, the record reflects that plaintiff performed his job as part of the project and during its normal course, and at the site where most if not all the demolition occurred.

potential contractor or person. (See <https://www2.cslb.ca.gov/OnlineServices/CheckLicenseII/checklicense.aspx> [as of Jan. 24, 2011].)

## CONCLUSION AND DISPOSITION

We conclude the Court of Appeal erred in applying the statutory household domestic service exclusion. The judgment is reversed and the matter is remanded to that court for further proceedings consistent with the views expressed herein.

Kennard, Acting C. J., Werdegar, J., Chin, J., Moreno, J., Corrigan, J., and George, J.,* concurred.

---

*Retired Chief Justice of California, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.