Filed 5/24/23  P. v. Estrella CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>LUIS ESTRELLA,<br><br>    Defendant and Appellant. | E076273<br><br>(Super. Ct. No. RIF1705258)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Samuel Diaz, Judge. Affirmed.

Christine Vento, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland , Assistant Attorney General, Arlene A. Sevidal and Randall D. Einhorn, Deputy Attorneys General, for Plaintiff and Respondent.

## I.

## INTRODUCTION

A jury convicted defendant and appellant Luis Estrella of various offenses arising from his sexual abuse of his step-daughter, Jane Doe. The trial court sentenced him to a term of 270 years to life. Defendant argues the trial court erroneously instructed the jury in two respects. We find no prejudicial error and affirm the judgment.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Doe, born in 2004, and her mother, R.P., moved in with defendant in 2007. In 2012, when Doe was eight years old, defendant began sexually abusing her. Over the course of many years, defendant abused her on a virtually daily basis. Defendant orally copulated her, forced her to orally copulate him, fondled her chest and crotch, vaginally penetrated her, and sodomized her. Defendant routinely threatened violence against her and her family if she told anyone about his abuse. Defendant was also consistently mean to Doe, and told her she was "nothing" and had "no control."

When Doe was around 11 or 12 years old, she eventually told R.P. about defendant's abuse in December 2017. Shortly afterward, R.P. took Doe to the police station. Personnel at the station directed R.P. to take Doe to a hospital for a sexual

---

[1] Our recitation of the facts and procedural background is truncated given the nature of defendant's arguments on appeal and our resolution of them.

assault examination.  A vaginal swab contained sperm, but there was insufficient genetic information to determine whose it was.

After the examination was performed, R.P. returned to the station with Doe and made a pretext call to defendant.  Defendant denied ever hitting Doe, but he was often evasive about R.P.'s questions about whether he sexually abused her and insisted that she come home to discuss things in person.  At other points during the call, however, defendant denied ever abusing Doe.  The call concluded with defendant saying, "[t]he cops are here" and that he was "going to be messed up for so long."

A scrotal swab of defendant contained DNA from defendant and someone else, which contained "strong evidence" that it was Doe's DNA.  Three t-shirts in the family house had defendant's sperm on them and Doe's DNA, while Doe's DNA was "possibl[y]" on a fourth t-shirt with defendant's sperm on it.

A jury convicted defendant of 14 counts of sex offenses against Doe:  six counts of sexual intercourse with a child 10 years of age or younger (Pen. Code, § 288.7, subd. (a); counts 1-6),[2] two counts of oral copulation with a child 10 years of age or younger (§§ 288.7, subd. (b), 289; counts 7 & 8), two counts of aggravated oral copulation of a child under 14 years of age (§§ 269, subd. (a)(4), 288a; counts 9 & 10), two counts of aggravated sodomy of a child under 14 years of age (§§ 269, subd. (a)(3), 288a; counts 11 & 12), and two counts of aggravated rape of a child under 14 years of age (§§ 261,

---

[2]  All further statutory references are to the Penal Code.

subd. (a)(2)(6), 269, subd. (a)(1); counts 13 & 14). The trial court sentenced defendant to an aggregate term of 270 years to life.

III.

DISCUSSION

Defendant argues the trial court erred by instructing the jury with CALCRIM No. 1190 and erroneously responding to the jury's question about the age of consent. We conclude the trial court properly gave CALCRIM No. 1190 and any error in its response to the jury's question was harmless.

1. *CALCRIM NO. 1190*

The trial court gave the jury CALCRIM No. 1190, which stated in full: "Conviction of a sexual assault crime may be based on the testimony of a complaining witness alone." The court also gave CALCRIM No. 301, which told the jury that "The testimony of only one witness can prove any fact. Before you conclude that the testimony of one witness proves a fact, you should carefully review all the evidence." Defendant contends that the instructions unconstitutionally lowered the prosecution's burden by telling the jury that Jane Doe's testimony "need not be scrutinized as closely as other evidence."[3]

But, as defendant concedes, our Supreme Court rejected a similar argument in *People v. Gammage* (1992) 2 Cal.4th 693 (*Gammage*). There, the defendant challenged

_____

[3] The People argue defendant forfeited the argument. We exercise our discretion to address it on the merits.

4

CALCRIM Nos. 301 and 1190 predecessor instructions, respectively CALJIC 2.27[4] and CALJIC 10.60.[5] (*Gammage*, *supra*, at pp. 700-702.) The court held the instructions were legally correct and did not imply "that the victim's testimony is more credible than the defendant's testimony." (CALCRIM No. 1190, Bench Notes; *Gammage*, *supra*, at pp. 700-702.)

Defendant argues *Gammage* was wrongly decided and suggests that we should "voice [our] disagreement" with it. We decline to do so, follow it here, and conclude the trial court properly gave CALCRIM Nos. 301 and 1190 to the jury. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455; *Gammage*, *supra*, 2 Cal. 4th at pp. 700-702.)

2. *Answer to Jury Question*

During deliberations, the jury submitted a question asking, "Is there a 'age of consent' or an age when consent could be made by another person or an age when a person's consent cannot be made." The trial court indicated that it would respond in part by telling the jury that the age of consent is 18, which the court thought was appropriate

---

[4] CALJIC 2.27 states in full: "You should give the [uncorroborated] testimony of a single witness whatever weight you think it deserves. Testimony concerning any fact by one witness, which you believe, [whose testimony about that fact does not require corroboration] is sufficient for the proof of that fact. You should carefully review all the evidence upon which the proof of that fact depends."

[5] CALJIC 10.60 states in full: "It is not essential to a finding of guilt on a charge of [rape] [unlawful sexual intercourse] [(sexual activity)] that the testimony of the witness with whom sexual relations is alleged to have been committed be corroborated by other evidence."

under *People v. Soto* (2011) 51 Cal.4th 299. Defendant objected because *Soto* involved only to lewd and aggravated lewd acts with a minor under the age of 14 (§ 288, subd. (a)-(b)(1)), an offense defendant was not charged with.

The court disagreed and answered the jury's question as follows: "The legal age of consent is 18. [¶] Counts 1-6 require sexual intercourse of a child ten years of age or younger. Refer to Calcrim 1127. [¶] Counts 7-8 require oral copulation of a child ten years of age or younger. Refer to Calcrim 1128. [¶] Counts 9-14: Specified sexual acts with a child under fourteen. In charges 9-14, the People have the additional element of proving, beyond a reasonable doubt, the sexual act was accomplished by use of force, violence, duress, menace or fear of immediate and unlawful bodily injury to the child or someone else. Refer to Calcrim 1123, then the underlying Calcrim for the separate acts: Calcrim 1000 for rape; Calcrim 1015 for oral copulation and Calcrim 1030 for sodomy. As to lesser included offenses of battery for counts 9-14, please refer to Calcrim 960."

Aggravated sexual assault on a child by means of oral copulation (counts 9 & 10) requires an act of "[o]ral copulation, in violation of paragraph (2) or (3) of subdivision (c), or subdivision (d), of [s]ection 287 or former [s]ection 288a." (§ 269, subd. (a)(4).) Aggravated sodomy of a child (counts 11 & 12) requires "[s]odomy, in violation of paragraph (2) or (3) of subdivision (c), or subdivision (d), of [s]ection 286." (§ 269, subd. (a)(3).) Aggravated sexual assault on a child by means of rape (counts 13 & 14) requires an act of "[r]ape, in violation of paragraph (2) or (6) of subdivision (a) of [s]ection 261." (§ 269, subd. (a)(1).)

6

Subdivisions (c)(2) of section 287 (oral copulation) requires that "the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person . . . ." Subdivision (c)(3) requires that "the act is accomplished against the victim's will by threatening to retaliate in the future against the victim or any other person . . . ." The same language is used in the corresponding subdivisions for sections 286 (sodomy) and 261 (rape).

Defendant argues the language in these subdivisions imposes a consent element for the offenses of aggravated sexual assault based on oral copulation, sodomy, and rape (counts 9-14). He further argues the consent element was reflected in jury instructions for the offenses because CALCRIM Nos. 1015 (counts 9 & 12) and 1030 (counts 11 & 12) said the jury had to find Jane Doe "did not consent to the act" while CALCRIM No. 1000 (counts 13 & 14) said the jury had to find she "did not consent to the intercourse." Defendant thus argues that the trial court's instruction that the legal age of consent is 18 removed a required element of the offenses from the jury's consideration, which was a violation of state and federal law.

We assume without deciding that defendant is correct that the trial court erred, the error violated his federal constitutional rights, and thus the federal standard for harmless error applies. (*Chapman v. California* (1967) 386 U.S. 18; *People v. Cole* (2004) 33 Cal.4th 1158, 1208-1209.) We conclude any error was harmless beyond a reasonable doubt.

7

First, defendant never argued that Jane Doe consented. His defense theory was that Jane Doe lied about everything and that she was manipulated into doing so by her mother to help with her divorce with defendant. Defense counsel never suggested Jane Doe did or did not consent. In fact, defendant's counsel did not mention "consent" in closing argument. Counsel instead focused on attacking Jane Doe's credibility, explaining why her testimony was inconsistent or otherwise not credible, and the reasons why R.P. had a motive to pressure Jane Doe to lie about defendant's abuse. In other words, the entire defense was that the abuse never happened, not that it was consensual, which suggests the trial court's answer to the jury's question was harmless. (See *People v. Chandler* (2014) 60 Cal.4th 508, 525 [instruction purporting to remove element of offense harmless in part because it was irrelevant to defense theory].)

Second, even if the trial court had instructed the jury that defendant was guilty of counts 9 through 14 only if Jane Doe did not consent to the sexual acts, Jane Doe's testimony—which the jury necessarily believed—made clear that she did not consent. From the time defendant began abusing Jane Doe when she was eight until she was about 11 or 12, defendant repeatedly told her that he would hurt her and her family if she told anyone about his abuse, so she was afraid to talk about it. She remained afraid to reveal defendant's abuse up until she finally told her mother.

She testified that defendant physically forced her to orally copulate him and that she was afraid to resist because he was mean and much bigger. She explained that when she did not follow his orders, he would "painful[ly]" sodomize her. On the first occasion

when he sodomized her, she told him to stop, but he refused. On other occasions when she did not obey him, defendant would pin her on the floor and hit her with hard objects.

The only evidence that defendant cites to support his argument that Jane Doe consented is her testimony that he stopped threatening her or her family with violence if she reported the abuse when she was 11 or 12 and asked him to start using condoms.

But neither shows that she consented to his abuse. In addition to testifying that defendant repeatedly used force and threats to abuse her, Jane Doe testified that she did never told anyone about defendant's abuse until telling her mother because she remained afraid of defendant. And when she finally told her mother, she was scared that defendant was going to hurt her, or she would end up hurting herself. When telling her mother about defendant's abuse, Jane Doe appeared like "a scared child" and said she was afraid of defendant. Finally, Jane Doe testified she asked defendant to use a condom—which he refused to do—only because she did not want to get pregnant and planned on reporting his abuse, not because she consented to intercourse.

Lastly, we note that defendant argues the trial court's answer to the jury's question was prejudicial because there was insufficient evidence that defendant ever abused Jane Doe. But Jane Doe testified at length and in detail about defendant's abuse, and her testimony was buttressed by other evidence. Among other things, T-shirts at the family residence had Jane Doe's DNA and defendant's sperm on them, and her DNA was found on a scrotal swab on defendant. A vaginal swab on Jane Doe contained sperm, although it could not be determined whether it was defendant's. Defendant was evasive when R.P.

9

asked him during a pretext call whether he abused Jane Doe. And when R.P. told defendant not to sleep in the same room as Jane Doe and to stop all sexual activity with him, he agreed without denying the accusations. (See *People v. Combs* (2004) 34 Cal.4th 821, 843 [jury can construe "equivocal or evasive" answer to accusation as evidence of guilt].)

This case largely turned on Jane Doe's credibility. By convicting defendant as charged, the jury necessarily found her testimony credible. Because Jane Doe unambiguously testified that she never consented to defendant's abuse, no rational juror, who found her testimony credible, would have found that she consented or that defendant did not use force, violence, duress, menace, or fear. As a result, we conclude the trial court's answer to the jury's question, even if erroneous, was harmless.

IV.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:


RAMIREZ
P. J.


McKINSTER
J.

10