Filed 11/19/15  P. v. Lehman CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ARNOLD LEHMAN,<br><br>    Defendant and Appellant. | A141341<br><br>(Contra Costa County<br>Super. Ct. No. 05-131285-9) |

Defendant Arnold Lehman was charged with 49 counts of sex offenses committed against his granddaughter, Jane Doe 1, and another 2 counts of sex offenses committed against Jane Doe 2, another one of his granddaughters.  The jury convicted him on 41 of the counts.  Defendant now appeals, arguing: (1) the trial court erred in joining the counts relating to Jane Doe 1 and Jane Doe 2 in one trial, (2) the prosecutor committed *Griffin*[1] error by calling attention to defendant's refusal to testify in his own defense, (3) the information lacked the requisite specificity, (4) there was insufficient evidence to support defendant's convictions for some of the counts, (5) Jane Doe's 1's testimony was so vague as to violate his due process rights, and (6) the trial court erred in sentencing defendant.  We find defendant's substantial evidence challenge to three of the counts at issue has merit, but affirm in all other respects.

---

[1] *Griffin v. California* (1965) 380 U.S. 609 (*Griffin*) holds that a prosecutor may not comment upon a defendant's failure to testify on his or her own behalf.

# BACKGROUND

Defendant was charged by information on June 28, 2013. As to Jane Doe 1, Defendant was charged with 31 counts of committing a lewd and lascivious act against a child under the age of 14 (Pen. Code,[2] § 288, subd. (a), counts 1 to 31); 12 counts of committing a lewd and lascivious act against a child age 14 to 15, (§ 288, subd. (c)(1), counts 32 to 43), two counts of oral copulation of a minor (§ 288a, subd. (b)(1), counts 44 & 47), and four counts of sexual penetration of a minor[3] (§ 289, subd. (h), counts 45 & 46 and 48 & 49). As to Jane Doe 2, defendant was charged with two counts of committing a lewd and lascivious act against a child under 14. (§ 288, subd. (a), counts 50 & 51.) It was further alleged that defendant was eligible for a sentencing enhancement under section 667.61, subdivision (j)(2), because he committed an offense against more than one victim.

Jane Doe 1 and Jane Doe 2 are half sisters. Defendant is their grandfather. Shortly after Jane Doe 2 was born in June 2001, her family moved to Brentwood. Jane Doe 1 was about 8 at the time. The family's Brentwood home was owned by defendant, and he visited often.

Jane Doe 1 testified that, when she was 9 or 10 years old, defendant would give her back rubs. The back rubs occurred every time defendant visited, and they made Jane Doe 1 uncomfortable. When Jane Doe 1 was 10 or 11, defendant began massaging Jane Doe 1's front and chest. After Jane Doe 1 started wearing a bra, defendant would rub underneath the bra or push it up. Defendant would ask Jane Doe 1 if he could take off the bra, and she would say "no." Defendant would touch Jane Doe 1's breasts for 20 or 30 minutes.

When Jane Doe 1 was in seventh or eighth grade, defendant began moving his hands toward her pant line when he touched her. He also kissed her stomach, chest area,

---

[2] All statutory references are to the Penal Code unless otherwise specified.

[3] In the June 28 information, counts 46 and 49 charged defendant with sodomy of a minor in violation of § 286, subd. (b)(1). The charges were amended during trial to charge sexual penetration of a minor.

and lips. At defendant's request, Jane Doe 1 would lie down as he touched her. Jane Doe 1's younger brother testified that he once saw defendant and Jane Doe 1 lying on the floor kissing. When Jane Doe 1 was 14 or 15, defendant put his hands "underneath the pant line." Defendant would take off Jane Doe 1's pants and underwear and put his fingers inside her vagina. Jane Doe 1 could not recall exactly how often this happened, but she testified it occurred "every time [defendant] was over."

The touching continued when Jane Doe 1 was 16 and 17 years old, but eventually stopped towards her "later years of high school." Jane Doe 1 did not tell anyone in her family about defendant's conduct while it was ongoing. She testified she was afraid her family would not believe her. Jane Doe 1 eventually disclosed defendant's conduct to a college friend in 2012. Jane Doe 1 told her mother in or around December of that year, and the matter was reported to the police in February 2013.

Jane Doe 2 was 12 years old when she appeared at trial in October 2013. She testified that in or around 2012 her grandfather rubbed her back, and the back rub "felt weird."[4] She eventually asked him to stop. Two weeks later, Defendant rubbed Jane Doe 2's back underneath her clothes. Jane Doe 2 asked him to stop, and he did so. Jane Doe 2 testified there may have been other incidents, but she was not sure. Jane Doe 2 said defendant "mostly" touched her neck, but sometimes he would go lower, down to her waist.

Jane Doe 2's brother testified: "Every time [defendant] was near [Jane Doe 2], he always seemed to want to put his hand on her like giving her back rubs and such. [¶] And I remember she always acted like just disgusted every time it happened, and she would just kind of squirm out of his touch." Jane Doe 2's friend Alex told police she also witnessed one of defendant's back rubs. Alex stated defendant rubbed Jane Doe 2's back as he repeated her name softly. According to Alex, Jane Doe 2 looked "weirded out."

---

[4] During a police interview in March 2013, Jane Doe 2 testified the back rubs started earlier, when she was in fifth grade.

A jury found defendant not guilty of counts 1 and 7 (committing a lewd and lascivious act against a child under the age of 14); guilty of misdemeanor battery as a lesser offense on counts 17, 19, 22, 24, 28, 31, 46, and 49; and guilty as charged on the remaining 41 counts. Defendant filed a motion for a new trial, which was denied. The trial court subsequently sentenced defendant to an indeterminate term of 40 years to life, as well as a determinate term of 12 years.

## DISCUSSION

### A. Joinder

In his motion for a new trial, defendant argued the trial court erred by joining the counts relating to Jane Doe 1 and Jane Doe 2 and trying them together. The trial court rejected this argument, stating that even if the trial had been severed, evidence regarding Jane Doe 1 would have been admissible under Evidence Code sections 1101 and 1108 to show motive, intent, and modus operandi, and propensity. The court acknowledged such evidence was subject to Evidence Code section 352, but found defendant's conduct toward Jane Doe 1 and Jane Doe 2 was "very similar," and "the only difference" was that defendant's molestation of Jane Doe 2 was interrupted due to Jane Doe 1's decision to disclose her own molestation. Defendant now argues he was prejudiced by the joinder of the counts because the evidence he molested Jane Doe 2 was relatively weak compared to the evidence of his molestation of Jane Doe 1. According to defendant, the jury returned guilty verdicts on the Jane Doe 2 counts only because it drew impermissible inferences from the evidence regarding Jane Doe 1. The argument is unavailing.

Section 954 authorizes the joinder of "two or more different offenses connected together in their commission . . . or two or more different offenses of the same class of crimes or offenses, under separate counts . . . ." "The law favors the joinder of counts because such a course of action promotes efficiency. [Citation.] Nonetheless, . . . a trial court has discretion to order that properly joined charges be tried separately." (*People v. Merriman* (2014) 60 Cal.4th 1, 37.) "When exercising its discretion, the court must balance the potential prejudice of joinder against the state's strong interest in the efficiency of a joint trial. [Citation.] [¶] Joinder is generally proper when the offenses

4

would be cross-admissible in separate trials, since an inference of prejudice is thus dispelled." (*People v. Arias* (1996) 13 Cal.4th 92, 126.) Courts should also consider whether the charges are "unduly inflammatory" and whether "a 'weak' case will be unfairly bolstered by its joinder with other charges." (*Id.* at p. 127.) Even if a joinder ruling is correct when made, reversal is necessary where the defendant established that joinder "resulted in 'gross unfairness,' amounting to a denial of due process." (*Ibid.*)

Here, the similarity of the offenses precludes a finding that evidence of defendant's molestation of Jane Doe 1 was unduly inflammatory. We also disagree with defendant's contention that the case against him for the offenses against Jane Doe 2 was weak. At trial, Jane Doe 2 clearly described two occasions on which defendant touched her, and her accounts were corroborated by other percipient witnesses, her brother and her friend Alex. All three witnesses described the touching as inappropriate. Jane Doe 2 testified defendant gave her back rubs underneath her clothing and that the back rub made her feel uncomfortable. Jane Doe 2's brother testified she looked disgusted while she was receiving the back rub. And Alex stated Jane Doe 2 looked "weirded out" by the touching. Thus, even without the evidence of defendant's molestation of Jane Doe 1, there was substantial evidence that he was guilty of the two counts relating to Jane Doe 2.

Moreover, as the trial court held, the joinder of the charges did not prejudice defendant because evidence of his molestation of Jane Doe 1 would have been admissible in a separate trial regarding the Jane Doe 2 charges. Pursuant to Evidence Code section 1108, "jurors may 'infer the defendant has a disposition to commit sex crimes from evidence the defendant has committed other sex offenses,' and . . . jurors 'may—but are not required to—infer from this predisposition that the defendant was likely to commit and did commit the charged [sex] offense.' "[5] (*People v. Villatoro* (2012) 54 Cal.4th

---

[5] At oral argument, defendant questioned the constitutionality of Evidence Code section 1108. But our Supreme Court has already found the statute does not offend due process. (*People v. Falsetta* (1999) 21 Cal.4th 903, 915.) In any event, even in the absence of section 1108, the evidence in question would still be admissible to prove intent pursuant to Evidence Code section 1101.

1152, 1166–1167 (*Villatoro*).) Such inferences may be drawn from evidence of sex offenses that are both charged and uncharged. (*Id.* at p. 1167.) Propensity evidence regarding sexual offenses is admissible subject to Evidence Code section 352. (Evid. Code, § 1108, subd. (a).) Evidence of bad acts was also admissible to establish defendant's intent and absence of mistake, which were at issue here. (Evid. Code, § 1101, subd. (b).)

Defendant argues that had the Jane Doe 2 charges been tried separately, evidence regarding defendant's molestation of Jane Doe 1 would have been ruled inadmissible under Evidence Code section 352. We disagree. Under Evidence Code section 352, a trial court has the discretion to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) The principal factor affecting the probative value of evidence concerning a defendant's propensity to commit a sex offense is the similarity of the sex offenses at issue. (See *People v. Johnson* (2010) 185 Cal.App.4th 520, 531.) In this case, there were striking similarities between the charges relating to Jane Doe 1 and Jane Doe 2. Both victims were defendant's granddaughters. And defendant's early molestation of Jane Doe 1, specifically back massages over and under the shirt, was similar to the charged offenses regarding Jane Doe 2. As the trial court held, the only significant difference between the two cases was that defendant's molestation of Jane Doe 2 was interrupted after Jane Doe 1 chose to disclose his conduct to her family and the authorities. Moreover, evidence of defendant's molestation of Jane Doe 1 was highly probative of his intent in touching Jane Doe 2.

Defendant contends that, even if the "bulk" of the evidence regarding his molestations of Jane Doe 1 would have been admissible in a separate trial on the Jane Doe 2 charges, he was still prejudiced by the joinder of the counts. Defendant appears to argue that if *any* portion of the evidence regarding Jane Doe 1 was not cross-admissible, the trial court was obligated to try the charges separately. Defendant cites no authority in support of this proposition. Nor are we aware of any. In any event, contrary to

6

defendant's suggestion, the jury was not permitted to consider weak or stale evidence concerning his molestation of Jane Doe 1 in determining whether defendant was predisposed to commit the charged offenses against Jane Doe 2. The trial court instructed the jury: "If you find beyond a reasonable doubt that the defendant committed a sexual offense charged in this case, you may but are not required to infer that the defendant had a disposition to commit sexual offenses." Our Supreme Court has approved of similar instructions in this context. (See *Villatoro*, *supra*, 54 Cal.4th at p. 1168 [because "the instruction clearly told the jury that all offenses must be proven beyond a reasonable doubt, even those used to draw an inference of propensity. . . . [T]here was no risk the jury would apply an impermissibly low standard of proof"].)

On the other side of the scale, the state had a strong interest in the efficiency of a joint trial. The Jane Doe 1 and Jane Doe 2 counts were for the same class of crimes and much of the evidence and argument relating to those counts overlapped. Further, and perhaps more importantly, since the evidence concerning Jane Doe 1 and Jane Doe 2 was cross-admissible, joinder saved the victims from the ordeal of having to twice testify to instances of molestation. Jane Doe 2 was only 12 years old at the time of trial, and according to the trial court, was emotionally distraught and terrified while on the stand. Testifying about her abuse a second time likely would not have been any easier.

Accordingly, we find the trial court did not abuse its discretion in joining the counts regarding Jane Doe 1 and Jane Doe 2.

## B. *Griffin* Error

In *Griffin*, the United States Supreme Court held a defendant's Fifth Amendment right against self-incrimination is violated when a prosecutor comments on the defendant's refusal to testify. (*Griffin*, *supra*, 380 U.S. at p. 614.) Defendant argues the prosecution committed *Griffin* error in closing arguments. We disagree.

During closing arguments, the prosecutor argued: "The defendant did these acts with a lewd intent at the time that he acted. This wasn't for some future intent. He liked it at the time that he did it." The prosecutor later continued: "This was not an oversight. This was not a mistake of fact, that [defendant] made the mistake of doing this to Jane

7

Doe [2], and 'I'm sorry. I didn't have any intent to do that.' He knew exactly what he was doing which is why—" At that point, defense counsel interrupted with a *Griffin* objection, and the court called a recess to hear argument. After the recess, the trial court provided the following instruction: "I want to remind the jurors . . . that the fact that a defendant does not testify is not something that you can consider."

Defendant now asserts that, although the prosecutor did not get a chance to complete her argument, it was obvious she intended to say defendant did not testify in order to avoid admitting he had a lewd intent. Defendant argues the *Griffin* error was apparent because the prosecutor recited the testimony defendant could have given: "I'm sorry. I didn't have any intent to do that." Defendant also argues that the trial court's instruction did not cure the purported error, since it merely reminded the jury that defendant did not take the stand to deny his guilt.

We are not persuaded. As an initial matter, we can only speculate as to what the prosecutor would have said had she not been interrupted by defense counsel's objection. Even if the prosecutor had intended to comment on defendant's failure to testify, she never actually spoke the words. More importantly, there was no reasonable likelihood the jury would have interrupted the prosecutor's argument as a comment on defendant's failure to testify. We do not construe the prosecutor's statements as a suggestion that defendant needed to testify in order to establish he was not motivated by a lewd intent. Rather, the prosecutor appeared to be arguing the evidence did not support a finding that defendant's actions were a mistake or accident. At most, the prosecutor's remark was ambiguous, and we cannot infer that the prosecutor intended the remark "to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." (*Donnelly v. DeChristoforo* (1974) 416 U.S. 637, 647.)

Defendant's authority on this point is distinguishable. For example, in *People v. Vargas* (1973) 9 Cal.3d 470, *Griffin* error was found where the prosecutor argued the defendants had not denied they were at the scene of the crime. (*Id.* at p. 474.) Likewise, in *People v. Crawford* (1967) 253 Cal.App.2d 524, the prosecutor commented on

8

defendant's failure to disclose his alibi when he was arrested, argued the prosecution's evidence was "uncontradicted," and stated: "The only thing we have heard from the defendant is this roundabout story from these relatives." (*Id.* at p. 535.) In contrast, in the instant action, the prosecution merely argued the evidence showed the defendant harbored the requisite intent and suggested defendant could not plausibly claim his actions were an accident.

## C. Sufficiency of the Evidence

Defendant argues there was insufficient evidence to support conviction on several of the counts charged. In considering this challenge, we apply the substantial evidence standard. (*In re Ryan D.* (2002) 100 Cal.App.4th 854, 859.) In doing so, we do not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses. (*People v. Jones* (1990) 51 Cal.3d 294, 314 (*Jones* ); see *People v. Cortes* (1999) 71 Cal.App.4th 62, 71.) "Although it is the duty of the [trier of fact] to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the [trier of fact], not the appellate court[,] which must be convinced of the defendant's guilt beyond a reasonable doubt. ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment." ' " (*People v. Bean* (1988) 46 Cal.3d 919, 932–933.) We find substantial evidence supported the jury's verdict on the challenged counts, with the exception of counts 18, 23, and 30.

### 1. Counts 50 and 51

Defendant asserts there was insufficient evidence to support his conviction on counts 50 and 51. These counts asserted defendant committed lewd acts upon a child under the age of 14, specifically Jane Doe 2, in violation of section 288, subdivision (a). We find there was substantial evidence to sustain convictions on both counts.

In count 50, defendant was charged with committing a lewd act against Jane Doe 2 when she was 10 years old. Defendant argues his conviction on this count must be reversed because the prosecution presented no evidence that he touched Jane Doe 2 in an

inappropriate manner before her 11th birthday. At trial, Jane Doe 2 did testify that defendant rubbed her back for the first time in the fall of 2012, when she was 11 years old and in the sixth grade. However, during a recorded interview with police officers, Jane Doe 2 also stated defendant "started" touching her when she was in fifth grade, at which time she would have been 10 years old. Based on this evidence, the jury could have reasonably concluded Jane Doe 2 was molested when she was 10.

As to counts 50 and 51, defendant argues there was insufficient evidence to establish that he harbored the requisite intent. Section 288, subdivision (a) requires the prosecution to prove: (1) the defendant touched a child under the age of 14, and (2) "that sexual gratification must be presently intended at the time such 'touching' occurs." (*People v. Martinez* (1995) 11 Cal.4th 434, 444.) While the touching of the victim is required, "the form, manner, or nature of the offending act is not otherwise restricted." (*Ibid.*) "[A] lewd or lascivious act can occur through the victim's clothing and can involve 'any part' of the victim's body." (*Ibid.*) "[T]he purpose of the perpetrator in touching the child is the controlling factor and each case is to be examined in the light of the intent with which the act was done. . . . If [the] intent of the act, although it may have the outward appearance of innocence, is to arouse . . . the lust, the passion or the sexual desire of the perpetrator [or the child,] it stands condemned by the statute . . . ." (*People v. Hobbs* (1952) 109 Cal.App.2d 189, 192.)

In this case, there was substantial evidence defendant acted with a sexual intent. Jane Doe 2 testified that defendant stroked her back over and under her clothing in a way that made her feel uncomfortable. She also testified that defendant sometimes continued stroking her after she asked him to stop. Alex, Jane Doe 2's friend, stated defendant would rub Jane Doe 2's back while repeating her name. Alex also said Jane Doe 2 had a strange look on her face while this was happening. Likewise, Jane Doe 2's brother testified Jane Doe 2 looked "disgusted" while receiving back rubs from defendant and tried to "squirm" away from him. Evidence concerning Jane Doe 1 further supports the conclusion that defendant's conduct toward Jane Doe 2 was motivated by a desire for sexual gratification. (See Evid. Code, §§ 1101, subd. (b), 1108, subd. (a).) When Jane

10

Doe 1 was younger, defendant touched her in a similar manner. [6] Defendant's conduct later escalated to the point where defendant was kissing Jane Doe 1 and penetrating her vagina. Based on this evidence, and the fact that defendant began touch Jane 2 after Jane Doe 1 left the family home, the jury could have reasonably concluded defendant was trying to groom Jane Doe 2 for more serious abuse.

Defendant argues there was no evidence from Jane Doe 2 that he outwardly displayed any lewd intent. But Jane Doe 2's apparent discomfort, along with her testimony that defendant sometimes refused to stop touching her, suggests there was something more to defendant's caress than familial affection. Defendant further argues that evidence of his molestation of Jane Doe 1, without more, is legally insufficient to prove a charged sex offense. But as discussed above, the prosecution introduced more than propensity evidence to prove defendant's intent. The authority on which defendant relies merely holds that evidence of prior sex offenses is not, by itself, sufficient to prove a defendant committed the charged offenses beyond a reasonable doubt. (See, e.g., *People v. Hill* (2001) 86 Cal.App.4th 273, 278.) That authority does not hold that propensity evidence, in conjunction with evidence of touching and the victim's perception of the touching, is insufficient to prove intent.

Defendant's reliance on *People v. Mansell* (1964) 227 Cal.App.2d 842, is also misplaced. In that case, the court affirmed an order setting aside an information charging the defendant with a violation of section 288. (*Id.* at pp. 842, 848.) The victims' accounts of the alleged molestation were "confused, contradictory and fragmentary" and an adult witness "describe[d] nothing which would distinguish defendant's conduct from the most innocent play with neighbor children." (*Id.* at pp. 847–848.) The court held: "Inevitably some friendly but incautious adults will bounce little children on their knees,

---

[6] Defendant argues there was no evidence to prove he had a lewd intent at the time he rubbed Jane Doe 1's back when she was 9 or 10 years old. But the jury found otherwise, as it convicted him on counts 2, 3, 8, and 9, which were premised on the back rub allegations. Moreover, as discussed below, substantial evidence supported the jury's verdicts on these counts.

11

and necessarily the adults will touch the legs of the children in the process, and some other adults will assume the worst. But such commonplace behavior is not enough to support an inference of an intent to commit the atrocious crime described in Penal Code, section 288." (*Id.* at p. 848.) We do not disagree with the court's rationale. But in this case, there was substantially more evidence of a lewd intent.

### 2. Counts 2, 3, 8, and 9

Defendant contends there was insufficient evidence to convict him on counts 2, 3, 8, and 9.[7] These counts charge that defendant committed lewd acts against Jane Doe 1 when she was 9 and 10 years old. According to defendant, all of these counts must be predicated on back rubs he gave to Jane Doe 1. Defendant argues that the only evidence he harbored a lewd intent in performing these back rubs is propensity evidence regarding later, more explicit conduct described by Jane Doe 1. Defendant asserts such evidence, without more, is insufficient to establish his intent in connection with the earlier crimes. This line of argument is unavailing. Jane Doe 1 testified defendant did more than rub her back before she turned 11. She also testified that, when she was 10 or 11, defendant began massaging her front and chest. As to the counts concerning defendant's earlier acts, Jane Doe 1 testified the back rubs were frequent and made her feel uncomfortable. Based on this evidence, as well as the evidence of defendant's later acts, the jury could have reasonably concluded defendant had the requisite intent.

### 3. Count 13

Count 13 alleged defendant committed a lewd act upon Jane Doe 1 in San Ramon sometime between January 2002 and August 2003. Defendant argues there is insufficient evidence to support a conviction on this count, since Jane Doe 1's testimony at trial indicated the only incident that occurred in San Ramon happened in 2007. We are not convinced.

---

[7] Defendant argues there was insufficient evidence to sustain convictions on counts 1 and 7 as well, but the jury acquitted on those counts.

At trial, Jane Doe 1 testified that, while she was visiting defendant's house in San Ramon, defendant rubbed her stomach, lifted up her shirt, "move[d] up" her bra, and put his hands in her pants. She also testified the incident occurred "the summer going into high school," which means it would have happened sometime in 2007. In an earlier recorded police interview, Jane Doe 1 stated the incident took place while she was in fourth grade, which means it would have happened in 2003.

While Jane Doe 1's account of the timing of the San Ramon incident varied, we must view the record in the light most favorable to the judgment. (*People v. Johnson* (1980) 26 Cal.3d 557, 562.) "Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends." (*People v. Huston* (1943) 21 Cal.2d 690, 693.) Here, the jury could have reasonably concluded that Jane Doe 1's earlier description of the incident was more accurate than her trial testimony.

### 4. Counts 18, 23, and 30

Counts 18, 23, and 30 charged defendant with committing a lewd or lascivious act upon a child under the age of 14, to wit, kissing and sucking on Jane Doe 1's breasts, while Jane Doe 1 was 11, 12, and 13 years old, respectively. Defendant argues it would have been speculative for the jury to conclude that the breast kissing incidents occurred before Jane Doe 1 turned 14. We agree. Jane Doe 1 testified that, when she was "still in middle school," defendant "would start kissing [her] stomach and [her] chest area." However, she did not specify when in middle school the breast kissing started. Jane Doe 1's middle school was grades six to eight, and she was between the ages of 11 and 14 during this period. Based on this evidence, the jury could only speculate that the conduct charged in counts 18, 23, and 30 started before Jane Doe 1 turned 14, let alone that the conduct occurred when Jane Doe was 11, 12, and 13 years old. "By definition, 'substantial evidence' requires *evidence* and not mere speculation." (*People v. Thomas* (1992) 2 Cal.4th 489, 545.) Accordingly, defendant's convictions on counts 18, 23, and 30 must be reversed.

### 5. Counts 15, 25, 27, 32, and 39

The above referenced counts charged defendant with the lewd act of taking off Jane Doe 1's clothing in violation of section 288. Defendant argues there was insufficient evidence to sustain convictions on these counts as separate offenses because, according to Jane Doe 1, the act of taking off her clothes was always accompanied by some other touching or sexual act. According to defendant, he is being punished multiple times for the same bad act. The argument is unavailing.

Pursuant to section 654, "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." In the context of sex crimes, "section 654 will not apply unless the crimes were either incidental to or the means by which another crime was accomplished." (*People v. Alvarez* (2009) 178 Cal.App.4th 999, 1006.) For example, in *People v. Greer* (1947) 30 Cal.2d 589, 604, the court held that removal of the victim's clothing was incidental to the subsequent statutory rape and thus did not warrant separate punishment. However, section 654 "does not apply to sexual misconduct that is 'preparatory' in the general sense that it is designed to sexually arouse the perpetrator or the victim. [Citation.] That makes section 654 of limited utility to defendants who commit multiple sex crimes against a single victim on a single occasion." (*People v. Alvarez*, at p. 1006.)

In this case, the trial court instructed the jury that the defendant could only be convicted of the "clothes off" charge in count 15 if it found the act occurred on an occasion different from the lewd and lascivious conduct charged in count 17 ("rub vagina") and in count 19 ("kiss vagina"). Similar instructions were provided for the other "clothes off" charges for counts 25, 27, 32, and 39.

We are not convinced that the jury disregarded these instructions. Jane Doe 1 testified that defendant removed her clothes and touched her every time he visited her home over an extended period. Based on this testimony, the jury could have reasonably concluded that it was convicting defendant for removing Jane Doe 1's clothes on

14

occasions different from the lewd and lascivious conduct charged in the other counts. As the trial court stated when denying defendant's motion for a new trial, there is no double punishment where, for example, a defendant is convicted for five counts of removing clothing and five counts of unlawful sexual intercourse, and the evidence shows that on 10 occasions the defendant removed the victim's clothing and had unlawful sexual intercourse.

## D. Due Process

Defendant argues he could not mount an adequate defense because almost all of the counts charged in the information regarding Jane Doe 1, as well as Jane Doe 1's testimony regarding those counts, lacked the requisite specificity. Defendant contends this amounted to a due process violation, and his convictions on all counts should therefore be reversed. We disagree.

In *People v. Jones*, *supra*, 51 Cal.3d 294, our Supreme Court acknowledged that cases of child molestation "frequently involve difficult, even paradoxical, proof problems." (*Id.* at p. 305.) For example, children molested over a substantial period of time by an adult residing in their home may have "no practical way of recollecting, reconstructing, distinguishing or identifying by 'specific incidents or dates' all or even any such incidents."[8] (*Ibid.*)

To address these problems, the court enunciated an evidentiary standard to balance defendants' right to fair notice of the charges and to a reasonable opportunity to defend against those charges with the state's need to ensure that child molesters are not immunized from substantial criminal liability merely because their victims, who are often quite young, are unable to recall precise details concerning the incidents of abuse. (*Jones*, *supra*, 51 Cal.3d at pp. 305, 315–316.) Under this evidentiary standard, a child

---

[8] The Legislature reacted to these proof problems in child molestation cases in part by enacting section 288.5 in 1989, which punishes a continuous course of sexual abuse rather than a particular incident. (*People v. Cortes* (1999) 71 Cal.App.4th 62, 75 ["the statute punishes repetitive activity as a course of conduct, defined as at least three acts over at least three months" (italics omitted)].) Defendant was not charged under section 288.5 in this case.

victim's "generic" testimony may be sufficient to support a conviction for sexual abuse so long as the testimony describes: (1) "the kind of act or acts committed with sufficient specificity, both to assure that unlawful conduct indeed has occurred and to differentiate between the various types of proscribed conduct (e.g., lewd contact, intercourse, oral copulation or sodomy)"; (2) "the number of acts committed with sufficient certainty to support each of the counts alleged in the information or indictment (e.g., 'twice a month' or 'every time we went camping')"; and (3) "the general time period in which these acts occurred (e.g., 'the summer before my fourth grade,' or 'during each Sunday morning after he came to live with us'), to assure the acts were committed within the applicable limitation period." (*Jones*, *supra*, 51 Cal.3d at p. 316, italics omitted; see also *People v. Matute* (2002) 103 Cal.App.4th 1437, 1444–1445, italics omitted.)

The court also concluded this standard was consistent with due process requirements. The right to notice was not violated due to "the availability of the preliminary hearing, demurrer and pretrial discovery procedures." (*Jones*, *supra*, 51 Cal.3d at p. 318.) Moreover, the fact that a child victim may not be able to recall specific dates or other details did not abridge the right to present a defense. (*Id.* at pp. 319.) The court explained: "[O]nly infrequently can an alibi or identity defense be raised in resident child molester cases. Usually, the trial centers on a basic credibility issue—the victim testifies to a long series of molestations and the defendant denies that any wrongful touchings occurred." (*Ibid.*) Moreover, "[e]ven when an alibi defense is tendered, there is no reason why the jury would be less inclined to credit the defense as applied to appropriate counts, merely because the victim's generic testimony has implicated the defendant in additional counts or offenses not challenged by the alibi." (*Ibid.*)

Here, Jane Doe 1 testified with adequate specificity. For example, she stated defendant began giving inappropriate back rubs when she was 9 or 10 years old. When she was 10 or 11, defendant began touching her chest. In seventh or eighth grade, when Jane Doe 1 was 14 or 15, defendant touched her below the pant line and began to kiss

16

her. During this time, defendant would also put his fingers inside her vagina. Jane Doe 1 testified this happened every time defendant visited her home.

Defendant argues Jane Doe's 1's testimony as to the time period of the abuse was too vague to support his convictions. But other than some of the substantial evidence issues addressed above, defendant does not discuss specific instances where Jane Doe 1's testimony was overly vague as to time. To the extent defendant is asserting the counts charged in the information are too vague because some of them encompass time periods as long as a year, his argument lacks merit. Nothing in *Jones*, *supra*, 51 Cal.4th 294 or the other authority cited by defendant suggest that such charges are inappropriate, especially in cases such as this, where the abuse spans several years. Defendant suggests that because Jane Doe 1 was 20 years old at trial, much older than the victims in *Jones*, her testimony should be held to a higher standard as to specificity. But as defendant began touching Jane Doe 1 when she was 9 or 10 years old, and since the abuse continued for about seven years, it would be unreasonable to expect her to have perfect recall of every instance of molestation.

## E. Sentencing

The one strike law, codified at section 667.61, allows for indeterminate sentencing where, among other things, a defendant commits a section 288, subdivision (a) offense against multiple victims. (§ 667.61, subds. (a), (c)(8), (e)(4).) A one-strike multiple victim enhancement was charged in the information, and the jury found the multiple victim enhancement to be true for all of the section 288, subdivision (a) offenses for which defendant was convicted. Pursuant to these enhancements, the court sentenced defendant to two concurrent 25-year-to-life terms for the section 288, subdivision (a) violations committed against Jane Doe 2 (counts 50 & 51), and 24 concurrent 15-year-to-life terms for the violations committed against Jane Doe 1 (counts 2 to 16, 18, 20 & 21, 23, 25 to 27, and 29 & 30). Defendant challenges the one strike sentencing on three grounds, none of which are persuasive.

17

### 1. Multiple Victim Enhancement

First, defendant argues that a multiple victim enhancement was improper because the section 288, subdivision (a) counts regarding his second victim, Jane Doe 2, were not proven at trial. This argument fails, since as discussed above, we find the convictions on the Jane Doe 2 counts were supported by substantial evidence.

### 2. Notice

Next, Defendant argues the information did not put him on notice that one strike sentencing would apply to all the section 288, subdivision (a) counts charged. The one strike law states that its penalties apply only if the existence of the requisite circumstance is "alleged in the accusatory pleading," and is either admitted by the defendant or found to be true by the trier of fact. (§ 667.61, subd. (*o*).) Here, the information stated: "It is further alleged, pursuant to [section 667.61, subdivision (j)(2)], that in the commission of the above offense enumerated in subdivision (c), the Defendant . . . committed an enumerated violation in subdivision (e) to wit: the defendant committed an offense against more than one victim."

Defendant argues the multiple victim enhancement allegation is fatally vague. He asserts that by using the word "offense" the allegation indicated the enhancement would apply to just one of the counts charged, and it is impossible to determine which particular offense the enhancement applied to since the information does not specify. But the information does indicate the offense at issue is enumerated in section 667.61, subdivision (c), and the only type of offense charged in the information listed in that provision is a violation of section 288, subdivision (a). Nor do we interpret the enhancement allegation as applying to just one of the section 288, subdivision (a) counts. The use of the term "above offense" indicates the information is referring to single type of crime, not a single count. As defendant contends, if the contrary were true, it would be impossible to determine to which count the charging enhancement applies. The argument proves too much, as defendant's strained interpretation would render an otherwise clear allegation to be hopelessly vague.

### 3. Ex Post Facto

Finally, defendant asserts the one strike, multiple victim enhancement cannot apply to the section 288, subdivision (a) convictions for Jane Doe 1, because it would violate the rule against ex post fact laws. Ex post facto violations arise when a defendant is punished for an act which was not a crime when done or that inflicts greater punishment than the applicable law when the crime was committed. (See *Collins v. Youngblood* (1990) 497 U.S. 37, 42.) Defendant's argument implicates the second concern. He asserts that he committed the section 288, subdivision (a) crimes against Jane Doe 1 before they became punishable as one strike offenses. The argument is unavailing, as defendant's punishment was consistent with the provisions of the former one strike law.

Defendant appears to contend that, prior to 2006, section 288, subdivision (a) offenses did not qualify for one strike sentencing under any circumstances. Not so. Such offenses have qualified for one strike sentencing since the one strike law was first enacted in 1994. (Former § 667.61, subd. (c)(1), added by Stats. 1st Ex. Sess. 1993-94, ch. 14, § 1, p. 8570.) The only difference was that the former one strike law set forth an exception for indeterminate sentencing where the defendant qualified for probation under section 1203.066, subdivision (c). Specifically, the former one strike law stated that offenses qualifying for indeterminate sentencing included: "A violation of subdivision (a) of Section 288, unless the defendant qualifies for probation under subdivision (c) of Section 1203.066." (Former § 667.61, subd. (c)(7).) Amendments to the one strike law that went into effect on September 20, 2006 removed the probation exception. (Stats. 2006, ch. 337, § 33, p. 2639.)[9]

---

[9] In his opening brief, defendant incorrectly asserts the September 20, 2006 amendment added section 288, subdivision (a) as a qualifying offense, and that the probation exception was removed by Proposition 83, which went into effect November 7, 2006. Defendant's reply brief acknowledges that prior to September 20, 2006, section 288, subdivision (a) offenses could be subject to one strike sentencing, unless the defendant qualified for probation.

Under former section 1203.066, which was in effect at the same time as former section 667.61,[10] probation was not to be granted to persons convicted of violating section 288 where certain special circumstances applied. (Former § 1203.066, subd. (a)(1)–(9).) These circumstances included where the defendant was convicted of a section 288 offense against more than one victim, and where the defendant had "substantial sexual conduct with a victim who is under 14 years of age." (Former § 1203.066, subd. (a)(7)–(8).) Pursuant to former section 1203.066, subdivision (c), the aforementioned circumstances did not preclude a grant of probation where all of the following conditions applied: (1) the defendant is the victim's natural parent, adoptive parent, relative, or lives in the victim's household; (2) the grant of probation is in the best interest of the child; (3) rehabilitation is feasible; (4) the defendant is removed from the victim's household until the court determines the best interests of the victim would be served by the defendant's return; and (5) there is no threat of physical harm to the victim if probation is granted. (Former § 1203.66, subd. (c).)

In short, under the statutory provisions in force prior to September 20, 2006, a defendant could be sentenced to an indeterminate term if (1) the defendant committed a section 288, subdivision (a) offense against multiple victims, and (2) the defendant was not eligible for probation under section 1203.66, subdivision (c). All elements were present here. As discussed above, defendant committed section 288, subdivision (a) offenses against both Jane Doe 1 and Jane Doe 2. As to probation, defendant would be ineligible under former section 1203.066, subdivisions (a)(7) and (a)(8) because there were multiple victims and defendant engaged in substantial sexual conduct with Jane Doe 1 before she turned 14. Nor would defendant qualify for the carve-out set forth in former section 1203.066, subdivision (c). In addressing defendant's arguments below,

---

[10] Section 1203.066 was amended several times during the pertinent time period, but its relevant provisions remained substantially similar. (Stats. 1997, ch. 817, § 13, p. 5584; Stats. 2005, ch. 477, § 5, p. 3786; Stats. 2006, ch. 538, § 506, p. 4378.) The current statute is also similar in most relevant respects. (See § 1203.066, subds. (a), (d)(1).)

20

the court determined he was subject to indeterminate sentencing under the former one strike law because he did not qualify for probation under section 1203.066. The court reasoned probation would not be in the best interest of either victim, defendant was not amenable to rehabilitation, and there was a threat of ongoing molestation to Jane Doe 2.

Defendant does not challenge the trial court's factual findings, but argues the court should have never reached the issue of whether he was subject to the exception to probation ineligibility set forth in former 1203.066, subdivision (c). According to defendant, this exception was inapplicable because he was not ineligible for probation under former section 1203.066 in the first place. The information sets forth two probation ineligibility allegations: (1) defendant engaged in substantial sexual conduct with a child under age 14 in violation of section 1203.066, subdivision (a)(8), and (2) defendant committed, inter alia, a section 288, subdivision (a) offense against multiple victims in violation of section 1203.066, subdivision (a)(7). Defendant argues neither condition applied before the one strike law's amendment in 2006, as he did not have substantial sexual conduct with Jane Doe 1 or molest Jane Doe 2 until later in time.

Defendant misconstrues the ex post facto laws. The purpose of such laws is to place individuals on notice of the punishment for certain types of conduct. (See *People v. McVickers* (1992) 4 Cal.4th 81, 87.) Thus, the test is whether the defendant is being punished more severely based on laws enacted after the offense was committed. (*Collins v. Youngblood*, *supra*, 497 U.S. at p. 42.) Defendant is trying to turn this rule on its head by arguing he was punished more severely based on offenses committed after the one strike law was amended. As defendant was on notice of the potential for one strike sentencing when he committed those later acts, there was no ex post facto violation.[11]

_____

[11] Moreover, contrary to defendant's contentions, the former one strike law does not direct courts to examine whether a defendant is ineligible for probation under former section 1203.066, subdivision (a) when considering whether to employ one strike sentencing. Instead, it states that a section 288, subdivision (a) offense is subject to one strike sentencing, "unless the defendant qualifies for probation under subdivision (c) of [former] Section 1203.066." (Former section 667.61, subd. (c)(7).) Thus, the only pertinent inquiry is whether all of the factors set forth in former section 1203.066,

21

## DISPOSITION

Defendant's convictions on counts 18, 23, and 30 are reversed. The judgment is affirmed in all other respects.

---

subdivision (c) are satisfied. The trial court concluded that they were not, and defendant has offered no reason why we should doubt that conclusion.

_____

DONDERO, J.

We concur:


_____

HUMES, P.J.


_____

MARGULIES, J.

A141341